TOMPKINS COUNTY, Respondent, v. HARRISON DAY, Appellant.— GIBSON, P. J. Appeal by defendant from a judgment of the Supreme Court, Tompkins County, entered upon a verdict in favor of plaintiff for $3,029.10 damages to plaintiff county's police patrol car, resulting from its collision with defendant's automobile within a city street intersection, at about 6:30 A.M. on a clear, dry August morning. The only testimony adduced on the trial was that of the Deputy Sheriff who operated the police car and that of the defendant owner-operator. The Deputy Sheriff was responding to a call, conceded to be an emergency call (to a place some nine miles distant from the intersection where the accident subsequently occurred) to assist another deputy, who had been unable to "catch" a "drunk running through people's houses up there". Prior to the accident, the deputy operated the flashing red light on the roof of his car but at no time sounded his siren; not because there was danger of warning the suspect, nine miles away, but to avoid awakening people. Defendant testified that he was proceeding south on Meadow Street at a speed of about 15 miles per hour; that when 15 feet from the intersection he looked right and left on Court Street, observed no vehicle and, in fact, did not see the police car until the instant of the impact. The Deputy Sheriff testified, on direct examination, that as he proceeded west on Court Street and approached the intersection he slowed to 15 to 20 miles per hour (which he increased to 25 to 30 "going through the intersection"); and after looking right and left on Meadow Street and seeing no traffic, proceeded into the intersection, without stopping for the stop sign in place there to govern west-bound traffic. Looking again to the right, when "over halfway through the

intersection ", which he said was from 20 to 30 feet wide, he for the first time saw defendant's car, "almost on top of" him. On cross-examination, he said that when his car was "just entering the intersection" he made his first observation to his right on Meadow Street and that although he could see "Up to the Italian Bakery, or about a good city block", he observed no traffic. Cross-examination continuing, he verified his answers to questions on his examination before trial, at which he testified that when the front of his car was past the center of the intersection he observed the defendant's car coming by the Italian bakery, 300 to 400 feet away, and that he traveled but "10 to 12 feet" or "the length of a car or less" to the collision. On his brief redirect examination, he advanced no explanation for the wide variance in his testimony, saying merely that the distance to the bakery "could be 200 to 300" feet, rather than 300 to 400 feet. Thus, the deputy testified to two disparate and completely irreconcilable versions, each of which is clearly incredible; the first, that he looked and saw nothing within the 200 to 400 feet of his vision; the second, that when at least halfway through the intersection, he saw the other car 200 to 400 feet away, the other car then proceeding that distance while he traveled 10 to 12 feet at 25 to 30 miles per hour, this, of course, assuming an impossible speed by defendant's car. It seems to us that the only reasonable version and explanation are that the deputy truthfully testified that when he was well within the intersection he first saw defendant's car, "almost on top" of him; this because, instead of stopping or even slowing for the stop sign, he either accelerated his speed (as indicated on his direct examination) or (considering his rather questionable testimony as to an extremely sharp acceleration within the very few feet traveled within the intersection) failed to decelerate a higher rate of speed, and entered the intersection, against the stop sign, without making reasonable or adequate observation to his right. (Cf. *Healy* v. *Rennert*, 9 N Y 2d 202, 209–210; *Powers* v. *Medina*, 1 A D 2d 727.) Certainly, the deputy's operation in this fashion was negligent according to ordinary standards; and we consider that upon this record it was negligent within the statutes governing the operation of police vehicles in emergencies as well. The deputy was authorized to proceed past the stop sign "but only after slowing down as [might] be necessary for safe operation" and in no event was he relieved "from the duty to drive with due regard for the safety of all persons". (Vehicle and Traffic Law, § 1104, subd. [b], par. 2; subd. [d].) The finding, implicit in the verdict, that plaintiff's operator drove with due regard for the safety of others upon the highway, and thus without contributory negligence, was, under all of the circumstances of this case, contrary to the weight of the evidence. We do not reach appellant's additional argument that under the facts of this case, and particularlarly the showing that the Deputy Sheriff did not refrain from using the siren to avoid giving notice of his approach to a miscreant, the exemption from use of the siren, conferred upon police vehicles operated in emergencies, should not apply, and that the deputy was negligent in failing to utilize it to warn others upon the highway that he was pre-empting the right of way. (See Vehicle and Traffic Law, § 1104, subd. [c]; McKinney's Cons. Laws of N. Y., Book 62A, Vehicle and Traffic Law, p. 458, 1957 Revision Note relating thereto [N. Y. Legis. Doc., 1954, No. 36, Report of Joint Legis. Comm. on Motor Vehicle Problems, p. 37].) Judgment reversed, on the law and the facts, and complaint dismissed, with costs. Gibson, P. J., Herlihy, Reynolds, Staley, Jr., and Gabrielli, JJ., concur in memorandum by Gibson, P. J.