James O. ADKINS, Appellant,

v.

Michael LESTER et al., Appellees.

Brenda S. ADKINS and James O. Adkins,
Appellants,

v.

CITY OF FAIRBANKS and Michael Lester
et al., Appellees.

Nos. 2078, 2113.

Supreme Court of Alaska.

Dec. 16, 1974.

Rehearing Denied Feb. 3, 1975.
See 532 P.2d 1027.

**12**

Burton C. Biss, Anchorage, O. Nelson Parrish, James A. Parrish, Fairbanks, for appellants Brenda Adkins and James O. Adkins.

Thomas E. Fenton, Call, Haycraft & Fenton, D. Rebecca Snow, Law Office of Charles E. Cole, Fairbanks, for appellees Michael Lester and City of Fairbanks.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

ERWIN, Justice.

These cases arose from an automobile accident which took place in the City of Fairbanks on February 20, 1971.

James Adkins was operating an automobile eastbound on Airport Way in Fairbanks, accompanied by his wife, Brenda Adkins. The Adkins vehicle stopped at a flashing red light at the intersection of Airport Way and Cushman Street. Testimony indicated that there was a large snowbank piled on the corner to the left of the Adkins vehicle and Mr. Adkins pulled forward into the intersection in order to see oncoming traffic moving southbound on Cushman. Adkins then proceeded to make a right turn southbound on Cushman.

At the same time Sergeant Michael Lester was on duty with the Fairbanks City Police Department, and was driving an unmarked city police vehicle southbound on Cushman in response to a radio report that a burglary was in progress. Although Lester's vehicle had a siren and flashing red dashboard light available, they were not in use while he was responding to the burglary. At the intersection of Airport Way and Cushman, Sergeant Lester's vehicle collided with the Adkins vehicle.

Michael Lester brought an action against James Adkins, alleging negligence. Adkins alleged contributory negligence by Lester as a defense.

Brenda Adkins brought an action against her husband, James Adkins, alleging negligence. She also alleged the negligence of Michael Lester and the City of Fairbanks based upon respondeat superior, as well as an independent ground of negligence by the City of Fairbanks in failing to maintain visibility at the intersection due to the snowbank there. The actions were consolidated with the claim of Michael Lester and went to trial upon the issues of liability alone. A jury returned a verdict in favor

of appellees Michael Lester and the City of Fairbanks.

At trial Brenda Adkins called Officer Gerald Burnett of the Fairbanks Police Department to testify in regard to his investigation of the accident. The court sustained objections to testimony by Officer Burnett in regard to his opinions relating to factors causing the accident. By offer of proof it was shown that Burnett would have testified that the snowbank and the excessive speed of the city police vehicle driven by Michael Lester were contributing causes of the accident.

The court's jury instruction in regard to authorized emergency vehicles was based upon the Alaska Administrative Code, while appellants contended that an ordinance of the City of Fairbanks, a home rule city, represented the applicable law in regard to authorized emergency vehicles.

Appellants assert three major errors by the trial court. They contend that the jury instruction relating to authorized emergency vehicles was improperly based upon the Alaska state traffic regulation rather than upon the Fairbanks city ordinance; that the jury instruction relating to authorized

emergency vehicles did not properly state the law of the Alaska state regulation; and that the court erred in excluding the opinion of Officer Gerald Burnett regarding whether the speed of appellee Lester and the obscuring of appellant James Adkins' vision by a snowbank were contributing causes to the accident. Each of these will be discussed in turn.

*State Traffic Regulation*

■ It is now well established that violation of an administrative traffic rule which has been adopted by the court as a standard of reasonable behavior constitutes negligence *per se* in the absence of excuse or justification for the violation. Ferrell v. Baxter, 484 P.2d 250 (Alaska 1971), *construing* Rogers v. Dubiel, 373 P.2d 295 (Alaska 1962). The trial court's instruction [1] was provided as the applicable law from which the jury would determine whether plaintiff Lester complied with the standard of care in operating his police vehicle as an authorized emergency vehicle. That instruction paraphrased Title 13, § 02.585, of the Alaska Administrative Code [hereinafter cited 13 AAC 02.585].[2] Ap-

---

1. Jury Instruction 21 provided:

    If you find that Michael Lester violated a statute, regulation or ordinance governing the operation or movement of a vehicle, such violation is deemed excused and does not constitute negligence on the part of Michael Lester if you find that at the time of the collision Michael Lester was operating an authorized emergency vehicle responding to an emergency call and operated according to the law applicable to the operation of authorized emergency vehicles.

    An authorized emergency vehicle for the purposes of this case means a vehicle used by a publicly maintained police department and equipped with at least one lamp capable of displaying a flashing red light visible at 500 feet to the front and both sides in normal sunlight and also equipped with a siren capable of emitting sound audible under normal conditions from a distance of not less than 500 feet.

    The law applicable to the operation of authorized emergency vehicles provides that both the siren and the flashing red light shall be used in order for the plaintiff Lester to disregard a statute, regulation, or ordinance governing the operation or move-

ment of a vehicle, unless it can be reasonably shown that the use of either or both would prevent or hamper the apprehension or detection of a violator of a statute, ordinance or regulation.

    But even if you find that the use of such signals would have prevented or hampered the apprehension or detection of a violator, nevertheless, Plaintiff Lester was not relieved from his duty to drive with due regard for the safety of all persons and he is not protected from the consequences of a reckless disregard for the safety of others.

2. 13 AAC 02.585 provides, in pertinent part:

    (a) The driver of an authorized emergency vehicle, when responding to an emergency call or when in pursuit of an actual or suspected violator of a statute, regulation or ordinance or when responding to but not upon returning from a fire alarm, may disregard a statute, regulation or ordinance governing the operation or movement of a vehicle but subject to the conditions stated in this section.

    .      .      .      .      .

    (d) An authorized emergency vehicle, which is operated as an emergency police

pellants, however, contend that the applicable law is contained in § 7–106 of the Code of Ordinances of the City of Fairbanks.[3]

The state administrative regulation permits the driver of an authorized emergency vehicle, in response to an emergency call, to avoid the use of audible signals and warning lights when " . . . it can be reasonably shown that the use of either or both would prevent or hamper the apprehension or detection of a violator of a statute, ordinance or regulation." [4] The city ordinance permits the exemption from traffic regulations when audible signals are used " . . . as may be reasonably necessary . . . " and provides that police vehicles need not display a warning light visible from the front of the vehicle.[5] Thus the city ordinance requires the use of audible signals at all times and the state code does not. Because the two provisions are in conflict, we must examine the power

of the City of Fairbanks to enact and enforce its ordinance.

Recently the constitutional basis for denying regulatory authority to home rule municipalities was extensively reviewed and was clarified in Jefferson v. State, 527 P.2d 37 (Alaska 1974), where we stated:

> A municipal ordinance is not necessarily invalid in Alaska because it is inconsistent or in conflict with a state statute. The question rests on whether the exercise of authority has been prohibited to municipalities. The prohibition must be either by express terms or by implication such as where the statute and ordinance are so substantially irreconcilable that one cannot be given its substantive effect if the other is to be accorded the weight of law.[6]

We note that the legislature has granted to the commissioner of public safety authority to promulgate statewide traf-

---

vehicle, shall be equipped with an audible signal meeting the requirements of 13 AAC 04.210(d). The audible signal shall be used to exercise the exemptions granted in this section and, if also equipped with a visual signal meeting the requirements of 13 AAC 04.090, both shall be used, unless it can be reasonably shown that the use of either or both would prevent or hamper the apprehension or detection of a violator of a statute; ordinance or regulation.

(e) The provisions of this section do not relieve the driver of an authorized emergency vehicle from his duty to drive with due regard for the safety of all persons nor protect him from the consequences of his reckless disregard for the safety of others.

3. City of Fairbanks Code of Ordinances Annotated § 7–106 (1960) provides, in part:

(a) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.

(b) The driver of an authorized emergency vehicle may:

　.　　.　　.　　.　　.

(2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation.

(3) Exceed the stated or posted speed limits so long as he does not endanger life or property.

　.　　.　　.　　.

(c) The exemptions herein granted to an authorized emergency vehicle shall apply only when the driver of said vehicle while in motion sounds audible signal by bell, siren, or exhaust whistle as may be reasonably necessary, and when the vehicle is equipped with at least one lighted lamp displaying a red light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle, except that an authorized emergency vehicle operated as a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.

(d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.

4. 13 AAC 02.585(d).

5. City of Fairbanks Code of Ordinances Annotated § 7–106 (1960).

6. 527 P.2d at 43 (footnote deleted).

fic rules and regulations. AS 28.05.-030(a)(1). By statutes in force at the time this case arose, the legislature also provided that cities might regulate the use and operation of motor vehicles within their corporate limits, but required that

> ordinance provisions other than those for penalties must be compatible with provisions of state law relating to motor vehicles and motor vehicle operators within the city. . . . 1966 SLA, ch. 157, § 1 (repealed 1972).

This provision was specifically made applicable to home rule cities. 1966 SLA, ch. 157, § 6 (repealed 1972). By these provisions the legislature expressly prohibited a home rule city, such as the City of Fairbanks, from enacting an ordinance in conflict with the state regulations in regard to the use and operation of motor vehicles.[7] We therefore hold the Fairbanks city ordinance, to the extent it is in conflict with the state traffic regulations, constitutes an exercise of home rule power *expressly* prohibited by the legislature.

The trial court did not err in basing its instruction regarding emergency vehicles upon the state traffic regulations.

*The Jury Instruction*

■ Appellants further argue that the jury instruction relating to authorized emergency vehicles improperly stated the effect of 13 AAC 02.585, upon which it was based. The instruction provided in part:

> If you find that Michael Lester violated a statute, regulation or ordinance governing the operation or movement of a vehicle, such violation is deemed excused

and does not constitute negligence on the part of Michael Lester if you find that at the time of the collision Michael Lester was operating an authorized emergency vehicle responding to an emergency call and operated according to the law applicable to the operation of authorized emergency vehicles.

Appellants contend that this language implies that appellee Lester was completely excused from any negligence which also involved violation of a statute.

However, the court gave further instructions to the jury on the law applicable to authorized emergency vehicles. The instruction noted that, even if Lester was otherwise excused from compliance with the statutes or regulations.

> . . . Plaintiff Lester was not relieved from his duty to drive with due regard for the safety of all persons and he is not protected from the consequences of a reckless disregard for the safety of others.

Taken as a whole, then, the instruction does not imply that Michael Lester was entirely excused from his negligence in violating a statute. Its effect is merely to insure that violation of a statute by the driver of an authorized emergency vehicle will not result in a finding of negligence *per se* provided compliance with the emergency vehicle regulations are observed. The instruction makes clear that the operator of the vehicle remains liable for any act of ordinary negligence he may have committed. This is consistent with 13 AAC 02.585 and we find no error in the jury instruction.

7. The legislature has recently expressed much the same intent in enacting 1974 SLA, ch. 91, § 1, which provides, in regard to traffic provisions:
*Provisions Uniform Throughout State.* (a) The provisions of this title and the regulations promulgated under this title are applicable within all political subdivisions of the state. No political subdivision may enact an ordinance which is inconsistent with the provisions of this title or the regulations promulgated under this title. A political subdivision may not incorporate into a publication of traffic ordinances a provision of this title or the regulations promulgated under this title without specifically identifying the provision or regulation as a state statute or regulation.
(b) Notwithstanding (a) of this section, a political subdivision may enact necessary ordinances to meet specific local requirements.

### Testimony of the Police Officer

Former Officer Gerald Burnett of the Fairbanks Police Department testified to his observations made while investigating the accident. On direct examination by the attorney for appellant Brenda Adkins he was asked for his opinion in regard to causes contributing to the accident. An objection to the testimony was sustained by the trial court on the grounds that the accident report and the officer's conclusions were privileged under AS 28.35.080(c) [8] and AS 28.35.120.[9] Because of this ruling, the court did not rule upon Burnett's qualifications to testify as an expert witness.

Appellants urge that AS 28.35.120 bars only the use of the written accident report and not the officer's oral testimony or expression of opinion which may be contained within the report. Appellants secondly argue that the officer can testify to any opinions based upon his own observations.

This court has ruled that AS 28.35.120 bars admission into evidence of an investigating police officer's report made in connection with a traffic accident. Menard v. Acevedo, 418 P.2d 766, 767 (Alaska 1966). In *Menard*, however, we did not reach the question of whether an officer could be cross-examined regarding the contents of the report.[10]

Under proper circumstances, an expert witness may express an opinion on an ultimate issue. Ferrell v. Baxter, 484 P.2d 250, 268–269 (Alaska 1971); Oxenberg v. State, 362 P.2d 893, 900 (Alaska), cert. denied, 368 U.S. 56, 82 S.Ct. 189, 7 L.Ed.2d 128 (1961). It is necessary as a condition for the admission of such testimony only that the jury " . . . could receive ap-

preciable help or assistance from the opinion of the expert witness . . . ." [11]

For the contention that the statute does not bar an investigator's oral opinion, appellants primarily rely upon Krizac v. W. C. Brooks & Sons, Inc., 320 F.2d 37 (4th Cir. 1963) and Garey v. Michelsen, 227 Minn. 468, 35 N.W.2d 750 (Minn.1949). Neither case goes so far as to permit opinion testimony by an investigating officer. *Krizac* permitted cross-examination of the investigator in regard to the contents of an accident report provided no mention was made of the existence of the written report.[12] *Garey* rested upon a recent amendment of Minnesota's statute barring admission of accident reports which permitted oral testimony as to matters within the officer's personal knowledge and recorded in his notebook.[13]

In opposition, appellee Lester cites Lobel v. American Airlines, Inc., 192 F.2d 217 (2d Cir. 1951), and Berguido v. Eastern Air Lines, Inc., 317 F.2d 628 (3d Cir. 1963), which construe federal statutes barring use of aircraft crash investigation reports as evidence. The federal statutes in question, however, were broader in scope than our Alaska statute in providing that no part of such a report " . . . shall be admitted as evidence *or used* in any suit or action for damages growing out of any matter mentioned in such report . . . ." 49 U.S.C.A. § 1441(e) (1963). In contrast, AS 28.35.120 by its specific terms bars only the report's use in evidence.

Because the authorities are divided upon the question of how much evidentiary use can be made of accident reports and their contents, and because the question presented here is one of first impression in Alas-

---

8. AS 28.35.080(e) provides:

Every law enforcement officer who, in the regular course of duty, investigates a motor vehicle accident for which a report must be made, either at the time of and at the scene of the accident or thereafter by interviewing the participants or witnesses, shall, within 24 hours after completing the investigation, forward a written report of the accident to the Department of Public Safety.

9. AS 28.35.120 provides:

No report made in accordance with this chapter may be used in evidence in a criminal or civil action arising out of the accident that is the subject of the report.

10. 418 P.2d at 768.

11. 362 P.2d at 900.

12. 320 F.2d at 45.

13. 227 Minn. 468, 35 N.W.2d at 755.

ka, it is necessary to consider the policies underlying statutes barring the use of accident reports as evidence.

Foremost among the reasons for refusing evidentiary status to accident reports is their hearsay character.[14] Absent a statute, the reports may be admissible under the business records exception to the hearsay rule.[15] Courts have properly distinguished, for this purpose, the admissibility of the report itself and the admissibility of oral testimony dealing with the contents of the report of which the witness has personal knowledge.[16] This is consistent with the fact that the usual hearsay problems arising with such reports are not present where the author of the report testifies only to his personal observations and is subject to cross-examination. Such personal observations were admitted in the present case.

The second major consideration behind the statutory prohibition is the desire to prevent the jury from being unduly influenced by an official document.[17] This element is likewise absent where the contents of the report are conveyed by the oral testimony of the investigator.

Professor McCormick argues that such reports should be used as evidence, subject to the discretion of the trial judge.[18] Two reasons are advanced for this view. First, the investigator is usually an expert, at least to the extent of being experienced in accident investigation. Second, the report is prepared from investigations made at the time of the accident and thus tends to represent a more competent evaluation of the occurrence than subsequent investigation.

We find Professor McCormick's analysis persuasive. He notes that two safeguards are present to protect against an investigator's conclusions being given undue weight by the jury: the discretionary power of the trial court to exclude opinions which would be highly prejudicial, and the fact that such conclusions are open to dispute by contrary evidence. While Alaska's statute bars the admission of the report, it would seem the better rule that the expert investigator, like any other qualified expert, should be permitted to testify to his conclusions. The use of oral testimony to accomplish this would assure the further safeguard that his evaluation would be subject to cross-examination. In view of Alaska's established rule favoring admission of expert opinion testimony, it would seem wise not to exclude such expert testimony simply because the witness prepared the written report which is barred by the statute.[19] We hold that AS 28.35.120 does not prohibit the oral testimony or expert opinions of an investigator which are also contained in an automobile accident report.

Similarly, an expert witness is permitted to testify to an opinion based upon matters already before the jury or within his personal knowledge. Testimony here had already established facts in regard to the speed of Lester's police vehicle, the road conditions, traffic conditions, and the existence of a snowbank which may have obscured visibility. Since Burnett, as

---

14. Derrick v. Blazers, 355 Mich. 176, 93 N.W.2d 909 (1959); McCormick, Can the Courts Make Wider Use of Reports of Official Investigations?, 42 Iowa L.Rev. 363 (1957).

15. Wood, Admissibility of Accident Reports Required by Federal Law, 18 Hastings L.J. 181, 181–82 (1966).

16. See, e. g., Krizac v. W. C. Brooks & Sons, Inc., 320 F.2d 37, 44 (4th Cir. 1963); Berguido v. Eastern Air Lines, Inc., 317 F.2d 628, 632 (3d Cir. 1963).

17. Krizac v. W. C. Brooks & Sons, Inc., 320 F.2d 37, 44 (4th Cir. 1963).

18. McCormick, Can the Courts Make Wider Use of Reports of Official Investigations?, 42 Iowa L.Rev. 363, 364–365 (1957).

19. This holding clearly overrules any implication in Mace v. Jung, 386 P.2d 579, 580 (Alaska 1963), that witnesses named in the report would not be able to testify before the court. The doctrine of "fruit of the poisonous tree" is simply not applicable to this type of a situation.

shown by the offer of proof, would have testified to the contribution made to the accident by Lester's speed and the obscured visibility caused by the snowbank, facts were in evidence which the jury would have understood as the basis for Burnett's opinion.[20]

It is not clear from the transcript whether the court found Officer Burnett qualified to testify as an expert. Accepting a witness as a qualified expert is a matter within the discretion of the court[21] and there was testimony from which the court could have found him qualified. The court rested upon statute rather than Burnett's lack of qualifications in excluding his opinion testimony and further clearly stated that it had not decided Burnett's qualifications. Thus, it cannot be determined from the record whether Burnett's opinion testimony should have been admitted even if the statute were construed to permit it and upon remand the court must determine his qualifications as an expert.

Appellee City of Fairbanks urges that no prejudice resulted from the failure to admit Officer Burnett's testimony in regard to causation. The record shows the jury was presented with interrogatories which were phrased to divide the issues of "negligence" and causation. The jury responded that it found no negligence on the part of appellees but did not respond to the question of whether appellee Lester's actions were a legal cause of the accident. Appellee's argument, though unclear, seems to be that since the jury failed to find neg-

ligent conduct, the issue of causation became moot and the exclusion of testimony relating thereto was rendered harmless.

However, a detailed review of the evidence to be offered indicates that it cannot be so segregated into negligence and causation. Clearly, there are implications of negligent conduct contained in an investigator's opinion that the speed of the emergency vehicle was too fast for conditions and that the snowbank obscured the view of those entering the intersection from the direction of appellant. The excluded testimony went to both areas.

In Alaska, we have adopted the rule that an error is not harmless unless we can say with fair assurance, after stripping the erroneous action from the entire evidence, that the jury was not substantially swayed or affected by the error.[22] In the case at bar the entire thrust of appellant's case was that the emergency vehicle was travelling too fast for conditions and this factor, together with the obstruction of the intersection by the snow pile left by the City, combined with the negligence of James Adkins to cause the accident.

The jury found the snow pile was not a hazardous condition and that the emergency vehicle was not negligently operated, but it did not hear the expert opinion testimony of Officer Burnett that the speed of the emergency vehicle was excessive and that the snowbank obscured the view and that both were contributing causes of the accident.[23] It is thus not possible to say

20. *See* Crawford v. Rogers, 406 P.2d 189 (Alaska 1965).

21. Ferrell v. Baxter, 484 P.2d 250, 267 (Alaska 1971) ; Pedersen v. State, 420 P.2d 327, 335 (Alaska 1966).

22. Love v. State, 457 P.2d 622, 631 (Alaska 1969).

23. The text of the entire offer of proof was as follows :
MR. BISS : I asked the witness this morning, to the effect that based on his observation, his training and his experience and his investigation of this accident scene, did he have an opinion as to whether or not the

snowbank obstruction was a contributing circumstance or cause to this accident, and he answered that question yes. And then when I asked for the opinion—at least, this is my recollection, there was an objection. My offer of proof is that if he were allowed to answer that question, he would answer it, that yes, the snowbank was a contributing factor to this accident.

Further—and I'm not sure whether or not this is in the record, but I would ask him the question as follows, based on your training and experience and on your personal observation of the observations of the layout of the intersection on both Cushman and Airport Way and the road sur-

with fair assurance that the jury could not have been swayed if the evidence had been introduced. Under such circumstances the error cannot be said to be harmless.

The case is reversed.

ERWIN, C. J., dissented in part.

RABINOWITZ, Chief Justice (dissenting in part).

My sole disagreement with the court's opinion arises from the majority's conclusion to remand to the superior court for a determination of Officer Burnett's qualifications as an expert. For, in my view, the exclusion of Officer Burnett's opinion tes-

timony in the factual context of this record was harmless error under the standards of Love v. State, 457 P.2d 622, 631 (Alaska 1969).

Here the majority opinion recognizes that there is testimony in the record establishing the speed of Officer Michael Lester's vehicle, the road conditions, traffic conditions, and that the existence of the particular snow bank may have obscured visibility. In light of these circumstances, I do not think that the jury could have received appreciable assistance from the opinions of the purported expert, Officer Burnett. Ferrell v. Baxter, 484 P.2d 250, 269 (Alaska 1971).

face, the time of day, the weather conditions, your observation of the debris and the markings on the road surface, the damage to the vehicles, the location of the vehicles after the impact and the marks left on the road after impact, the statements made to you by Sgt. Lester, and based on the measurements you took and the location of the point of impact and the snowbanks and the visibility of the drivers at this intersection, do you have an opinion

as to whether the speed of the police vehicle was excessive or too fast. And my offer of proof is that if he answered that question, his answer would be yes. And if he were allowed to give that opinion, he'd give an opinion that the police vehicle speed was excessive and too fast. He would further give the opinion that this was one of the contributing circumstances or causes of this accident.

MR. PARRISH: I'd like to join in the offer.