Mickey Joe RUTHERFORD and Britta
Rutherford, Appellants,

v.

STATE of Alaska, Appellee.

No. 3453.

Supreme Court of Alaska.

Dec. 28, 1979.

James A. Parrish, Fairbanks, for appellant.

Stephen D. Cramer, Merdes, Schaible, Staley & DeLisio, Fairbanks, for appellee.

Before CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

DIMOND, Senior Justice.

## OPINION

Alaska State Trooper Rollie Port was driving on Cushman Street in Fairbanks. He received a radio call regarding an automobile accident located approximately ten miles from Fairbanks. Port turned on his red lights and siren at about Sixth Avenue and Cushman, and increased his speed to about 35 miles an hour. As he approached the intersection of Third Avenue and Cushman, he slowed down to approximately 20 to 25 miles per hour and entered the intersection against a red traffic light.

Appellant Mickey Rutherford was traveling on Third Avenue, and since the light was green, he entered the intersection at Third Avenue and Cushman. His view, and also that of Port, was obstructed by a building located close to the intersection on the corner. Port did not see Rutherford's car until both vehicles were about ten feet from the intersection. There was a collision of the two vehicles and Rutherford was injured. He brought this action for damages against the appellee, State of Alaska. The jury returned a special verdict finding Trooper Port not negligent, but finding Rutherford negligent in the operation of his vehicle. Judgment was entered in favor of the state, and Rutherford has appealed.

During the trial, after all of the evidence had been presented, Rutherford moved for a directed verdict on the issue of Trooper Port's negligence, leaving for the jury the question of Rutherford's "contributory neg-

ligence,"[1] and appropriate damages. The trial judge denied this motion, as well as subsequent motions for a new trial and for a judgment notwithstanding the verdict.

Port was driving an emergency vehicle, responding to an emergency call. Because of this, he was entitled to "disregard a statute, regulation or ordinance governing the operation of movement of a vehicle."[2] This right, however, is subject to conditions. One of them is that Port was not relieved of his duty "to drive with due regard for the safety of all persons."[3] Nor did this right to disregard traffic laws, ordinances and regulations in these circumstances extend to "protect him from the consequences of his reckless disregard for the safety of others."[4]

Port was thus authorized to proceed through the intersection against a red stop light, but he had the duty to do so with due regard for the safety of other persons. The question presented is what a reasonable, prudent emergency driver would do under all of the circumstances, including that of the emergency.[5]

 Rutherford contends that the court erred in not granting his motion for a directed verdict to the effect that Trooper Port was negligent. We have stated the appropriate standard for review on this point as follows:

It is well established that the proper role of this court, on review of motions for directed verdict or for judgment notwithstanding the verdict, is not to weigh conflicting evidence or judge of the credibility of the witnesses, but is rather to determine whether the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable men could not differ in their judgment.[6]

Viewing the facts in the light most favorable to the non-moving party (the state), we have this situation:

(1) Trooper Port went through a red light at a speed of 20 to 25 miles per hour.[7]

(2) Port's view of cross-traffic entering the intersection was obstructed by a building close to the corner, to the extent that Port himself testified that he might have avoided the accident only by slowing to ten miles an hour or less. The passenger in the car with Port, Trooper Biesemeyer, testified that in order to avoid traffic crossing Cushman Street on a green light, Port's car would have had to slow virtually to a stop at that intersection. Trooper Biesemeyer testified that

you practically have to come to a stop in the downtown intersection when you're— when you've got a blind intersection and you're running against a red light before

---

1. The concept of contributory negligence was abolished and that of comparative negligence adopted in 1975. *Kaatz v. State*, 540 P.2d 1037 (Alaska 1975). Trial in this case took place in 1977.

2. 13 AAC 02.585(a).

3. 13 AAC 02.585(e).

4. *Id.* The Administrative Code provisions referred to in notes 2, 3 and 4 were replaced, in somewhat modified form, by 13 AAC 092.517.
 The Department of Public Safety was authorized to promulgate the regulations applicable in this case by AS 28.05.030. The current authorization provisions are in AS 28.05.011, as enacted in ch. 178, § 6, SLA 1978.

5. *See Torres v. City of Los Angeles*, 58 Cal.2d 35, 22 Cal.Rptr. 866, 873–876, 372 P.2d 906, 913–16 (1962). This is the modern rule followed by the majority of jurisdictions. *See* 1B Personal Injury § 3.08[1] at 588–89 (Bender, 1974 & July 1979 Supp.). *See generally* E.

Fisher and R. Reeder, Vehicle Traffic Law 84–90 (1974).

6. *Holiday Inns of America, Inc. v. Peck*, 520 P.2d 87, 92 (Alaska 1974). *See also L. E. Spitzer Co. v. Barron*, 581 P.2d 213, 215 (Alaska 1978); *Teller v. Anchorage Asphalt Paving Co.*, 545 P.2d 177, 180 (Alaska 1976); *Wilson v. Sibert*, 535 P.2d 1034, 1036 (Alaska 1975) (negligence question).

7. The lowest estimate of the trooper's speed, 20 to 25 miles per hour, was made by Officer Ruebel. However, he made that estimate at a point two blocks from the accident intersection, and Trooper Port testified that he had accelerated to about 30 miles per hour, or even a little more, and then slowed to less than 30 miles per hour at that intersection. Trooper Biesemeyer, who was a passenger in Port's car, estimated the trooper's vehicle speed at 25 to 35 miles per hour at the intersection.

you could proceed through the intersection[.]

(3) Port was responding to a notice of an accident. Both he and Biesemeyer testified that the time lost in slowing to a safer speed at the intersection where the accident occurred would not have significantly delayed their arrival at the accident scene about ten miles away.

(4) There was no testimony that Rutherford entered the intersection at an excessive rate of speed.

(5) Port had turned on his siren about three blocks from the intersection in question. While the testimony varied somewhat, Rutherford first heard the siren slightly before entering the intersection. He testified that, as he came from behind the corner of the building and entered the intersection, he became aware of the siren.[8] He also stated that he looked in all directions to ascertain the source of the siren and then saw the trooper's car approaching "at a high rate of speed, and bearing sharply to the left, I guess it was an attempt to get around me." At that time the trooper's vehicle was about 30 feet from his vehicle, and a period of "perhaps one and one-half maybe two seconds" had elapsed since he first heard the siren.

(6) At the time of the accident, the temperature was about twenty-seven degrees above zero, and there were patches of snow and ice on the street.

Questions of negligence are ordinarily left to the jury. From the evidence in this case, however, the conclusion is inescapable that Trooper Port entered a "blind," hazardous intersection against a red light, and at a speed which he acknowledged was too great to allow him to avoid oncoming crossing traffic. This was hardly a "reasonable, necessary measure to alleviate the emergency" to which he was responding. *See Torres v. City of Los Angeles,* 58 Cal.2d 35, 22 Cal.Rptr. 866, 874, 372 P.2d 906, 914 (1962). There were no exigencies or other facts presented which justified his actions as a matter of public policy. Viewing the evidence in the light most favorable to the state, we find that reasonable minds could not differ in their judgment and could only conclude that Trooper Port was negligent.[9]

The trial court left for determination by the jury the question of whether there was any negligence on the part of Trooper Port. This was error. The court should have granted Rutherford's motion for directed verdict on the question of Port's negligence and instructed the jury that Port was negligent as a matter of law.

■ This does not mean, however, that Rutherford should recover the full amount of damages that he established at the trial. Although hardly conclusive, there was sufficient evidence presented to permit the jury to have found that Rutherford heard or should have heard the siren as he approached the intersection, and should have yielded the right-of-way to the oncoming police vehicle by stopping instead of entering the intersection. Thus, there was evidence that there may have been negligence on Rutherford's part, in addition to the evidence of negligence on the part of Trooper Port. The case will have to be remanded for a new trial in order for the jury to determine whether Rutherford was negligent and, if so, to apply comparative

---

8. In a portion of Rutherford's deposition which was read to the jury, he hypothesized that he might not have heard the siren clearly because the Saab that I was driving has an extremely noisy heater in it, you know, it's got a side vent that blows air along one end to the window and all.

9. This is the general standard for review of denials of motions for directed verdicts. *See L. E. Spitzer Co. v. Barron,* 581 P.2d 213, 215 (Alaska 1978); *Teller v. Anchorage Asphalt Paving Co.,* 545 P.2d 177, 180 (Alaska 1976);

*Wilson v. Sibert,* 535 P.2d 1034, 1036 (Alaska 1975).

There are cases from other jurisdictions which have found an emergency driver negligent as a matter of law in factual contexts similar to the one presented here. *See, e. g., Calvert Fire Ins. Co. v. Hall Funeral Home,* 68 So.2d 626 (La.App.1953); *City of Kalamazoo v. Priest,* 331 Mich. 43, 49 N.W.2d 52 (1951); *Tompkins County v. Day,* 29 A.D.2d 709, 286 N.Y.S.2d 157 (1968); *Parton v. Weilnau,* 169 Ohio St. 145, 158 N.E.2d 719 (1959); *Butler v. Ramsey,* 121 N.E.2d 176, 179 (Ohio Mun.1954).

negligence principles, apportion the degrees of negligence attributable to Rutherford and to Trooper Port, and assess damages accordingly.[10]

The trial court denied Rutherford's request to have admitted into evidence two memoranda that had been prepared by state troopers who had investigated the accident. Rutherford claims this ruling is error. We choose to address this evidentiary issue, since it will be presented on remand should Rutherford seek to introduce the memoranda into evidence at a new trial.

One memorandum was from Corporal Edwin G. Close to Sergeant Lowell D. Parker, with a copy to Col. M. E. Dankworth, dated October 11, 1972. This document summarizes the facts of the accident and concludes:

> Due to the foregoing it appears both Trooper Port and Micky [sic] Rutherford contributed to the causes of the accident. Trooper Port could have avoided the accident had he approached the difficult intersection at a slower speed that would have enabled him to stop for any cross traffic crossing pursuant to a green traffic light; and Micky Rutherford could have avoided the accident had he stopped or even slowed immediately to pin point the emergency vehicle he heard and yield to it as required by 13 AAC 02.140. Trooper Port complied with 13 AAC 02.-505 with the exception of showing a lack of sound judgment in approaching the difficult cross intersection at approximately 30 M.P.H. against the red light. I recommend that Trooper Port be given a written letter of reprimand.

The other memorandum was from Sergeant Parker to Lieutenant Ralph E. Shafer, dated October 13, 1972. It also describes the factual context of the accident, though in somewhat different language, and concludes:

> It is my opinion that the responsibility for the accident lies with both drivers. The accident could have been avoided if Mr.

Rutherford, the driver of the second vehicle, would have attempted to determine where the emergency vehicle was, upon hearing the siren, before entering the intersection. This puts Mr. Rutherford in violation of 13 AAC 02.140 as he stated he had heard the siren before entering the intersection.

> Trooper Port was complying with the requirements of 13 AAC 02.585 with the exception of paragraph (e). This paragraph does not relieve the driver of an emergency vehicle from his duty to drive with due regard for the safety of all persons, nor protect him from the consequences of his reckless disregard for the safety of others.

> I do not feel that Trooper Port was operating in a reckless manner, but I do feel that he used poor judgment in entering a blind intersection at 30 MPH, against the red light and on icy streets.

> I recommend a letter of reprimand be placed in Trooper Port's personnel file.

Rutherford sought the admission of these documents into evidence as admissions made by employees of the state concerning a matter within the scope of their employment. The superior court, however, refused to admit the documents. Much of the argument made by the state to sustain the trial court's ruling is that Rutherford failed to properly authenticate these documents. However, as Rutherford points out, the state's attorney at trial admitted the authenticity of the documents, but contested their admission on substantive grounds. This is illustrated by the following exchange between counsel:

> THE COURT: Well, how are they [the memoranda] identified?

> [RUTHERFORD'S ATTORNEY]: In the request for production, defendant's admitted that these are State records.

> [STATE'S ATTORNEY]: I don't deny that now, Your Honor. However, I don't think they constitute an admission of

---

**10.** The doctrine of comparative negligence has been adopted as the law of this state. *State v. Kaatz*, 572 P.2d 775 (Alaska 1977); *Kaatz v. State*, 540 P.2d 1037 (Alaska 1975). *See also* H. Woods, Comparative Fault § 21:1 at 407 (1978).

anything anyway. They're in a—they contain a opinion of a State employee that there should be a letter of reprimand placed in a file. That's all they—so—now, if we're going to put that into evidence, certainly I have the right to cross examine that State employee on his opinion. He's not here.

The state also argues that there was insufficient evidence presented to show that these memoranda concerned a matter within the scope of employment of Corporal Close and Sergeant Parker. Again, as Rutherford contends, there seems to be no dispute that Close and Parker investigated the accident in their official trooper capacity.[11] As Trooper Port testified:

Q Who investigated the accident, do you know on behalf of the Troopers?

A Corporal Close, with the State troopers, and my patrol sergeant, Lowell Parker was there also.

Q And did they go through a normal investigation?

A I—I believe so, yes, sir.

Q Were—I mean, did you observe them taking measurements and whatnot?

A I did. I did not partake in any of this, but I observed them doing it, yes.

As Rutherford says, "The existence of the employment relationship was never questioned—only its legal effect was disputed." We find this to be a correct statement of what occurred at the trial. The record sufficiently establishes the authenticity and nature of the memoranda in question.

The state argues that introduction of these memoranda in evidence was barred by AS 28.35.120.[12] That statutory section provides:

*Use of accident reports in evidence.* No report made in accordance with this chapter may be used in evidence in a criminal or civil action arising out of the accident that is the subject of the report.

The section in this same chapter which is concerned with reports made by law enforcement officers is AS 28.35.080(e), which provides:

(e) Every law enforcement officer who, in the regular course of duty, investigates a motor vehicle accident for which a report must be made, either at the time or and at the scene of the accident or thereafter by interviewing the participants or witnesses, shall, within 24 hours after completing the investigation, forward a written report of the accident to the Department of Public Safety.

Viewed together, these provisions have been held by this court to prevent the admission of police reports into evidence.[13] However, none of these cases has dealt with documents such as the trooper memoranda in this case.

Rutherford contends that these memoranda are not "reports" within the meaning of AS 28.35.120. Rather, he argues that they are intradepartmental memoranda concerning a state trooper's involvement in an accident, and not part of the official report which must be forwarded to the Department of Public Safety pursuant to AS 28.35.080(e).

---

11. In a *Request for Production,* Rutherford asked for, among other things:

 2. Any and all written or recorded statements, observations, measurements, diagrams, drawings, or reports prepared by Troopers Sgt. Parker and/or Cpl. Close of the accident which is the subject of this litigation.

The state's Notice of Compliance with the Request for Production responded to this particular request in this way:

 PRODUCED: The official trooper report contains all such statements, observations, measurements, diagrams, and drawings.

12. While, as both Rutherford and the state note, the state did not raise the issue of the report exclusion statute in the trial court, that should not prevent consideration of this issue by this court. This court may affirm a trial court's ruling even on different grounds from those advanced by the trial court as the basis for that ruling. *See, e. g., Stordahl v. Government Employees Ins. Co.,* 564 P.2d 63, 67 n. 16 (Alaska 1977).

13. *See Kaps Transport, Inc. v. Henry,* 572 P.2d 72, 74 (Alaska 1977); *Adkins v. Lester,* 530 P.2d 11, 16–17 (Alaska 1974), *reh. denied,* 532 P.2d 1027 (Alaska 1975); *Menard v. Acevedo,* 418 P.2d 766 (Alaska 1966).

The state's response is that, while these memoranda "may not be parts of an official report *per se,* they certainly contain matters which are ultimately included in the report."[14] Therefore, the state suggests, it would be "more reasonable" to conclude that these trooper memoranda are within the scope of the exclusionary intent of AS 28.35.120. However, there is no evidence in the record, and it is not asserted by the state on appeal, that these memoranda were in fact a part of the "written report of the accident [forwarded] to the Department of Public Safety" as required by AS 28.35.-080(e). Therefore, the memoranda might be a part of the official trooper report, yet not a part of the "written report" made inadmissible by the statute.

Even if these memoranda were sent to the Department of Public Safety as a part of the "written report," pursuant to either state trooper or department policy, the statute need not bar their admission into evidence. A comparison might be made to the report of a driver of a vehicle involved in an accident, which is required by AS 28.35.-080(b) and therefore barred from admission by the statutory rule. We do not think that the driver's corporate employer could insulate its own internal reports, prepared for personnel or disciplinary purposes as were the trooper memoranda here, from admission by sending copies of them to the department with its employee's written driver's report. In short, we believe the purpose of these trooper memoranda, as is obvious from a reading of them and a comparison of them with the more factually thorough official report of the troopers' investigation of the accident, was not to apprise the Department of Public Safety of the results of the accident investigation, but to perform a departmental investigatory and disciplinary function.

Since we have recently expressed our view that there are "strong reasons for giving narrow scope to the statutory prohibition" of AS 28.35.120,[15] we believe the preceding analysis supports the conclusion that the memoranda were not inadmissible police investigatory reports in terms of that statute's language and purpose.

In *Adkins v. Lester,* 530 P.2d 11, 17 (Alaska 1974), this court recognized two main "reasons for refusing evidentiary status to accident reports." The first is their hearsay character and the attendant lack of cross-examination as to the assertions which they contain. However, if the memoranda are found to be "admissions," as Rutherford argues and as will be discussed later in this opinion, they are excepted from the hearsay rule.[16] The related concern with the absence of an opportunity for cross-examination similarly lacks weight because one of the most basic rationales for allowing the use of admissions as evidence is the belief that

[a] party can hardly object that he had no opportunity to cross-examine himself [as

14. The state characterizes these documents as "preliminary memoranda" and "preparatory materials." While we think that such characterization is not dispositive of this issue, it is apparently intended to convey the impression that the memoranda are the work product basis from which the official report is produced. This relationship between the two types of documents does not appear in the record and, furthermore, is called into question by the fact that the memoranda contain only very brief summaries of the facts of the accident, which are produced in great detail in the "official report."

15. *Kaps Transport, Inc. v. Henry,* 572 P.2d 72, 75 (Alaska 1977). A similar policy conclusion favoring a narrow construction of this exclusionary rule was reached in *Adkins v. Lester,* 530 P.2d 11, 17 (Alaska 1974). The commentators have favored the evidentiary use of official investigatory reports, at least at the discretion of the trial judge, because of the often high level of competence and reliability underlying them. *See* McCormick, *Can The Courts Make Wider Use of Reports of Official Investigations?* 42 Iowa L.Rev. 363 (1957); Wood, *Admissibility of Accident Reports Required by Federal Law,* 18 Hast.L.J. 181 (1966).

16. At common law, admissions were termed exceptions to the hearsay rule. Under Rule 801(d)(2) of the Alaska Rules of Evidence, admissions are considered "Statements which are not hearsay." In either case, the hearsay problem does not exist if the memoranda are held to be admissible as admissions. *See generally* R. Lempert & S. Saltzburg, A Modern Approach to Evidence 365–68 (1977).

to admissions attributable to him] or that he is unworthy of credence save when speaking under sanction of oath.[17]

The second policy consideration recognized in *Adkins* is "the desire to prevent the jury from being unduly influenced by an official document." 530 P.2d at 17. This concern is considerably diminished, if not eliminated in this case, if the memoranda are admissible as admissions. More influential than their "official" nature, in that event, would be the fact that the state's own agents concluded that Trooper Port was negligent. To rely on their "official" nature to explain their impact as admissions by the state would ignore the theory as to their probative value which underlies the admissions rule—they are a damaging or inconsistent statement made by employees of a party to the litigation.

While we could plausibly hold these memoranda were barred from admission as evidence by the statute, we believe a more reasoned approach, and one more consistent with our prior opinions on the subject, would be to hold the statute inapplicable to the memoranda in this case. To hold otherwise would be to rely mainly on the concern with their "official" persuasiveness. Not only is this rationale of somewhat limited value in this context, but it would also, in effect, and undesirably, we believe, create something of an exception to the rule permitting admissions to be introduced as evidence.

We find these memoranda should have been admitted as the statement of a party opponent made by an agent or employee concerning a matter within the scope of his agency or employment, made during the existence of the relationship. This court recently explicitly acknowledged this evidentiary rule in *P. R. & S., Inc. v. Pellack*, 583 P.2d 195, 196 n.1 (Alaska 1978), as it is set forth in Rule 801(d)(2)(D) of the Federal Rules of Evidence and the now-effective Alaska Rules of Evidence.[18]

While various justifications for the admissions rule have been presented by scholars in the field of evidence,[19] it is sufficient to recognize that "it is clear today that admissions of a party come in as substantive evidence of the facts admitted, and that no foundation or predicate, by examining the party himself, such as may be required for impeaching evidence, is prerequisite for proof of admissions." [20]

Subdivision (D) of Rule 801(d)(2) allows as evidence the statements embodied in these memoranda, if made by Corporal Close and Sergeant Parker "concerning a matter within the scope of [their] agency or employment, made during the existence of the relationship." The state argues that Rutherford did not present sufficient evi-

---

17. E. Morgan, *Basic Problems of Evidence* 266 (1962). In *Adkins,* this court allowed an investigating officer to testify as to his observations made while investigating an accident because this obviated any policy objection based on a lack of cross-examination, despite the fact that his observations necessarily paralleled the information in the inadmissible report which he had prepared. *Adkins v. Lester,* 530 P.2d 11, 17 (Alaska 1974).

18. Federal Rule 801(d)(2) and Alaska Rule 801(d)(2) provide, in identical terms:

> *Statements which are not hearsay.* A statement is not hearsay if . . .
> (2) *Admission by party-opponent.* The statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity, or (B) a statement of which he has manifested his adoption or belief in its truth, or (C) a statement by a person authorized by him to make a statement concerning the subject, or (D) a

statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

19. See McCormick on Evidence § 262 at 628–29 (2d ed. 1972), and R. Lempert & S. Saltzburg, A Modern Approach to Evidence 265–68 (1977), for summaries and analyses of these various justifications.

20. McCormick, *supra* note 21, § 262 at 629–30. This principal is, of course, inherent in the concept of a hearsay exception or non-hearsay and eliminates one of the objections to the memoranda's admission made by the state. At trial and in this court, the state argued that it should be given the opportunity to examine the investigating troopers with regard to the report as a condition of its admission.

dence at trial to demonstrate this relationship. It should be noted that at trial the state did not dispute the fact that these memoranda were prepared by Close and Parker in the course of their duties as the troopers investigating the accident.[21] In fact, Trooper Port himself testified that Close and Parker were investigating the accident for the troopers. Under the admissions principle of Rule 801(d)(2)(D), Alaska Rules of Evidence, there is no requirement that Close and Parker were authorized to speak for the state on the question of Port's negligence. That is a requirement for admission as an "authorized" admission under Rule 801(d)(2)(C).[22] It is sufficient under Rule 801(d)(2)(D) that the statements of Close and Parker were made while they were engaged in activities within the scope of their state employment and concerned a matter within the scope of that employment relationship.[23] We find that sufficient proof was presented of this necessary relationship to allow these memoranda to be admitted as admissions under Rule 801(d)(2)(D).

■ The state's assertion that the memoranda should not be admitted because they contained opinions and were not based on firsthand knowledge is without merit. As Rutherford notes, the majority view is that an admission is not inadmissible because it is not based on firsthand knowledge or is made in the form of an otherwise inadmissi-

21. The only question raised in this respect by the state at trial is as follows:

[STATE'S ATTORNEY]: . . . Your Honor, all they are is they're an opinion by one—by one State Trooper, perhaps. But he didn't even ask whether there had been a letter of reprimand; never asked Trooper Port whether there had ever been one in his file. There's been no testimony to support a letter of reprimand. All we have is an opinion of a trooper.

While this objection is relied on by the state in its brief in this court, it does not raise any obstacles as to these "admissions." Neither Close's nor Parker's memorandum stated that a reprimand had been placed in Trooper Port's file; they merely gave their opinions that he was negligent and recommended a reprimand. Even had they referred to an actual reprimand, these memoranda, as admissions, would have merely been evidence of a reprimand, which could be refuted by the state. As will be noted in this opinion, the opinion nature of the statements contained in these memoranda does not in any way affect their admissibility as admissions.

22. See note 18 supra for the full text of Rule 801(d)(2).

23. See, e. g., Gilmour v. Strescon Industries, Inc., 66 F.R.D. 146, 149–50 (E.D.Pa.1975); Farner v. Paccar, Inc., 562 F.2d 518, 525–26 (8th Cir. 1977) (interoffice memo by engineer warning of product's potential hazard). See also Process Control Corp. v. Tullahoma Hot Mix Paving Co., 79 F.R.D. 223, 225 (E.D.Tenn.1977) ("The query is whether [the employee] was authorized to act for [the employer] as to the matter out of which his statements grew.") (emphasis in original).

With reference to the identical federal Rule 801(d)(2)(D), Judge Weinstein says:

Rule 801(d)(2)(D) adopts the approach pioneered by Model Code Rule 508(a) and endorsed by Uniform Rule 63(9)(a) which, as a general proposition, makes statements made by agents within the scope of their employment admissible. No longer need judges, in cases like those discussed above, analyze the particular factors to determine whether the statement in question should be admitted as an exception to, or extension of, the traditional rule. Once agency, and the making of the statement while the relationship continues, are established, the statement is exempt from the hearsay rule so long as it relates to a matter within the scope of the agency. "[T]he authority to do an act would conclusively imply authority to speak narratively about the act, if the utterance was made before the termination of the agency."

4 Weinstein's Evidence ¶ 801(d)(2)(D)[01], at 801–137 (1978) (footnotes omitted). The breadth of this principle of admissibility was noted by one commentator in the context of the Uniform Rules of Evidence:

Rule 63(9)(a) eliminates the common law distinction between an agent with authority to act and an agent with authority to speak. The test is now one of general agency. Any admission made by the agent while the agency exists, concerning any matter within the general scope of employment, will be admitted in evidence as an admission of the principal.

Hetland, Admissions in the Uniform Rules: Are They Necessary?, 46 Iowa L.Rev. 307, 318 (1961) (suggesting that this broad principle should not be adopted, as any such statements which were reliable might be admitted under the "declaration against interest" common law exception).

ble opinion.[24] This majority view is that adopted in the Alaska Rules of Evidence[25] and rejects the state's arguments on this point. The superior court erred in ruling that the trooper memoranda were not admissible as admissions. The admission of the memoranda would have constituted further reason for the court to have granted a directed verdict in favor of Rutherford as to Trooper Port's negligence.

■ The complaint in this case was brought on behalf of both Mickey Rutherford and his wife Britta. Her claim was based on the allegation that, as a result of the injuries sustained by her husband in the collision with the trooper car, she was deprived of the comfort, companionship, society and consortium of her husband.

Both parties discussed Mrs. Rutherford's consortium claim in their opening arguments. There was extensive testimony at trial by Rutherford, his treating physician, Dr. Lindig, and the state's medical expert witness, Dr. Ha, as to the nature of Rutherford's injuries from this automobile accident. Most of this testimony concerned assessing the severity of those injuries and their effect on Rutherford's condition of previous and subsequent health and accident events. However, Mr. Rutherford also testified that these injuries had affected his relationship with his children and his wife.

He testified that the injury had "definitely" affected his relationship with his wife; that it had made him harder to get along with and more "irritable"; that it had created "a bit of a problem" by restricting his sexual activity; and that it had also restricted his other social and familial activities, including "driving [a] car, dancing, skiing, playing with my children, . . . walking and other hobbies." Mrs. Rutherford did not testify.

At the close of Rutherford's presentation of his case, the superior court ruled that the consortium claim would be withdrawn from the jury. The reason given by the court was that although Rutherford had testified as to the effect of his injuries affecting the loss of consortium between him and his wife, there was no testimony by Mrs. Rutherford as to any damages to her.

It is not determinative that Mrs. Rutherford did not personally testify, but merely relied on her husband's testimony, and the medical evidence as to the extent of his injuries. We see no reason why the competent testimony of the injured spouse or a third party cannot be used to support a consortium claim, though undoubtedly a claimant's direct testimony would be both more definitive and more persuasive.[26]

We find that Rutherford's evidence was sufficient to allow a jury to consider the

24. *See* R. Lempert & S. Saltzburg, A Modern Approach to Evidence 367 (1977) (footnote omitted):

The admissions exception is also peculiar in other respects. Other hearsay exceptions only overcome the objection that the declarant's out-of-court statement is hearsay. If the declarant's statement is cast in the form of an inadmissible opinion or is obviously not based on firsthand knowledge, the statement will be excluded on these grounds. A party's opinion, however, will be received against him and it will be assumed that he has carefully checked his sources when he is not relying on firsthand knowledge. Hence, in most jurisdictions the opinion rule and first-hand knowledge objection are unavailable when hearsay is offered as an admission.

25. *See* Commentary to Rule 801(d)(2):

The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstances, and from the restrictive influences of the opinion rule and

the rule requiring firsthand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for generous treatment of this avenue to admissibility.

This merely follows current Alaska practice. *See Mallonee v. Finch*, 413 P.2d 159, 163 (Alaska 1966) ("An admission by a party in a form of an opinion that the accident was due to his own fault is receivable against him at trial"). *See also Mahlandt v. Wild Canid Survival & Research Center, Inc.*, 588 F.2d 626, 630–31 (8th Cir. 1978).

26. *See Swiney v. Malone Freight Lines*, 545 S.W.2d 112, 117 (Tenn.App.1976) (spouse injured in automobile accident):

[Defendants] contend that the proof does not justify an award of $1000 to Mrs. Swiney for loss of her husband's service and consortium because, according to their principal contention, she did not testify nor participate in the trial. In view of the proof as to the injuries and disabilities of her husband, we find this assignment of error to be without merit.

consortium claim. While the superior court may have been concerned with jury speculation on the question, much of that concern is inherent in the nature of a jury's assessment of the extent to which an injury may have affected a marital relationship and the somewhat ephemeral nature of the elements of this relational interest. In *Schreiner v. Fruit*, 519 P.2d 462 (Alaska 1974), we recognized a claim for relief for loss of consortium in both husband and wife and characterized the interest affected as follows:

> A claim for relief for loss of consortium provides a means of recovery for an injury not otherwise compensable. It should be recognized as "compensating the injured party's spouse for interference with the continuance of a healthy and happy marital life." The interest to be protected is personal to the wife, for she suffers a loss of her own when the care, comfort, companionship, and solace of her spouse is denied her. The basis for recovery is

no longer the loss of services, but rather the injury to the conjugal relation.

*Id.* at 465–66 (footnote omitted).[27] With the exception of the absence of any testimony by Mrs. Rutherford, the evidence adduced in addition to that relating to the injury allegedly suffered by her husband was what it could only be on the subject in most cases: a spouse's summary narrative of the subtle effect of an injury on the conjugal relationship.

The court erred in removing from consideration by the jury the claim for loss of consortium.

The judgment is REVERSED and the case REMANDED for a new trial.

RABINOWITZ, C. J., not participating.

---

See also Ackerman v. Kramer Chemical Co., 158 N.J.Super. 128, 385 A.2d 898 (N.J.Super. App.Div.1978), *cert. granted,* 77 N.J. 499, 391 A.2d 513 (1978) (no opinion yet published by state supreme court). In *Ackerman,* as here, Mrs. Ackerman did not testify at trial and was not deposed but relied on her husband's testimony "about the effect of the accident on their relationship and upon his ability to be of help around the household." The court upheld a $25,000 consortium award, saying in part:

> Defendant moved at trial for dismissal of the wife's *per quod* claim because she did not appear or "provide affirmative proof in some form." Defendant also moved for judgment *n. o. v.* on the ground that the wife's claim should not have gone to the jury. Both motions were denied. The award did not shock the conscience of the trial judge or convince him that it was manifestly unjust. No motion was made for a new trial as to damages or for *remittitur,* and defendant at oral argument indicated that the sole ground for this appeal was that the claim should not have been allowed to go to the jury.
>
> We know of no requirement that the spouse asserting a *per quod* claim must do so by personal testimony, rather than through testimony of other competent witnesses. There is no merit to defendant's contrary contention.

*Id.,* 385 A.2d at 899.

27. The derivative and subjective nature of the loss of consortium does not diminish the impor-

tance of the affected interests. As the Texas Supreme Court has said:

> It has been argued that the deprived spouse's loss of consortium is an injury that is too indirect to be compensated because the elements involved are too intangible or conjectural to be measured in pecuniary terms by a jury. We do not agree, for to do so would mean that a jury would also be incompetent to award damages for pain and suffering. The character of harm to the intangible or sentimental elements is not illusory. The loss of companionship, emotional support, love, felicity, and sexual relations are real, direct, and personal losses. It is recognized that these terms concern subjective states which present some difficulty in translating the loss into a dollar amount. The loss, however, is a real one requiring compensation

*Whittlesey v. Miller,* 572 S.W.2d 665, 667 (Tex. 1978) (citations omitted). *See also Rodriguez v. Bethlehem Steel Corp.,* 12 Cal.3d 382, 401, 115 Cal.Rptr. 765, 777, 525 P.2d 669, 681 (Cal. 1974) (consortium "issue generally must be resolved by the 'impartial conscience and judgment of jurors who may be expected to act reasonably, intelligently and in harmony with the evidence' "). *See generally* H. Clark, Law of Domestic Relations § 10.5 (1968); D. Dobbs, Remedies § 8.11 (1973); J. Stein, Damages and Recovery §§ 203–19 (1972); Annot., *Measure and Elements of Damages in Wife's Action for Loss of Consortium,* 74 A.L.R.3d 805 (1976).