Jack D. KNIGHT,
Appellant/Cross-Appellee,

v.

AMERICAN GUARD & ALERT, INC.,
and Alyeska Pipeline Service
Company, Appellees/Cross-Appellants.

Nos. S–774, S–809.

Supreme Court of Alaska.

Feb. 21, 1986.

Millard F. Ingraham, Anchorage, and C.R. Kennelly, Kennelly, Azar and Donohue, Anchorage, for appellant/cross-appellee.

Wevley Wm. Shea, Hartig, Rhodes, Norman, Mahoney & Edwards, Anchorage, for appellee/cross-appellant American Guard and Alert, Inc., Lawrence R. Trotter, and Robert I. Shoaf, and Kenneth P. Eggers and Sema E. Lederman, Groh, Eggers & Price, Anchorage, for appellee Alyeska Pipeline Service Company.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

### INTRODUCTION

Jack Knight worked as a security guard for American Guard & Alert, Inc. (AGA), a security company, guarding the Trans-Alaska Pipeline. In 1980, AGA fired Knight for reasons which are the center of this dispute. AGA contends that it terminated Knight because he was an unfit employee. Knight alleges that AGA fired him in retaliation for informing Alyeska, the pipeline operator, that other AGA security guards were drinking and abusing drugs on the job. He therefore argues that the firing was not for just cause. He also alleges that Alyeska tortiously interfered with his employment contract by concurring in the decision to fire him and refusing to provide him with an alternate job on the pipeline. At the close of Knight's case, the trial court dismissed Knight's complaint against AGA for failure to state a claim and directed a verdict against Knight on his claim against Alyeska. We reverse the

dismissal of Knight's case against AGA, but affirm the directed verdict in favor of Alyeska.

## FACTS

On October 24, 1980, AGA fired Knight from his job as a security guard for AGA on the Trans-Alaska Pipeline. Knight testified that prior to his firing he tried to report the alleged drinking and drug abuse of his fellow guards to his superiors at AGA, but gave up because he "wasn't getting anywhere." Knight also claimed that one of the superiors (Lieutenant Bangs) "half-smiled and said, gee, I understand the Troopers are smoking marijuana down at the Academy now." After this conversation, Knight told Alyeska that AGA had a drinking and drug abuse problem. Lieutenant Bangs then visited Knight. According to Knight, Bangs "was very upset and then he got me a little upset too, and he said that we don't need anybody going to Alyeska with our problems. We can take care of our own problems and he said this is a good way to have one less security guard."

Shortly after this incident Knight drove an Alyeska car off a loading ramp while on patrol. Knight testified that he had worked in the area of the ramp only once before during the winter when the terrain was different than at the time of the accident (September). Witnesses testified that the area was poorly lit and poorly marked.

Knight stated that during the hours before the accident he experienced a "tightness, kind of a—like a little constriction across my chest, all the way across. Not a pain or a piercing pain of any kind, and it was more annoying." One witness testified that when he arrived at the accident site he heard Knight say two to three times "can't breathe, can't breathe." Knight testified that he suffered from mild hypertension. However, he also testified that it had never interfered with his work.

Knight was off work for about a week until a physician's assistant cleared him to return. Before AGA would permit Knight to resume work, it insisted that its own doctor clear Knight. The doctor cleared him.

Knight next had a "lengthy interview" with Jonathan Goldsmith, a senior AGA official. According to Knight, Goldsmith told Knight that he would have "to get with Mr. Wellington" (the Alyeska security manager) before allowing Knight to return to work. However, prior to meeting with Wellington Goldsmith decided to terminate Knight. He stated that the decision "was based on many things, including the interview with Jack Knight, the recommendation of his immediate supervisor, the evidence of his physical condition that he had presented to us, the incident involving his [driving off the loading ramp], numerous things."

Goldsmith then informed Wellington of the decision to fire Knight from his job as a regular security guard. He did, however, recommend to Wellington that Knight continue as a guard with a limited assignment, but Wellington rejected the proposal. According to Goldsmith, the AGA-Alyeska contract did not contain provisions for special assignments.

Shortly thereafter, Fay Wheeler (the AGA personnel manager) called Knight and told him he had been terminated. The reason she gave for the firing was that "Mr. Wellington just wanted you terminated." The trial judge excluded Wheeler's statement, saying that the testimony was inadmissible "until the foundation is laid as to how she obtained the information."

At the close of Knight's case, the court directed a verdict against Knight on his contractual interference claim against Alyeska. It concluded, among other things, that AGA made the termination decision, not Alyeska.

With respect to AGA, the trial court ruled that (1) enough evidence existed for Knight's case to go to the jury on whether his termination was for just cause, but that (2) Knight's complaint failed to state a claim upon which relief may be granted. The court denied Knight's request to

amend the pleadings to conform to the evidence and dismissed the case.

Finally, the court awarded $15,000 in attorney's fees to Alyeska, but awarded no fees to AGA as a sanction for making its motion to dismiss late.

Knight asserts that the court erred in the following four ways: (1) by dismissing Knight's case against AGA, (2) by directing a verdict against Knight on his claim against Alyeska, (3) by refusing to admit Wheeler's testimony on the reason for Knight's dismissal, and (4) by awarding attorney's fees to Alyeska in the amount of $15,000. AGA argues that the court erred by not granting a directed verdict in its favor and by not awarding it attorney's fees.

## DISCUSSION

### I. Did the Trial Court Err by Dismissing Knight's Case Against AGA?

#### A. Failure to state a claim upon which relief may be granted.

At the close of Knight's case, the trial court dismissed the complaint against AGA because "[it], as phrased, does not state a cause of action" and rejected Knight's motion to amend the complaint. The court dismissed Knight's complaint in response to the following argument of counsel for AGA, made just after the court had directed a verdict in favor of Alyeska: "[The complaint] says Alyeska ... had [AGA] summarily terminate in violation of public policy. I don't think there's a cause of action that remains against [AGA]."

The relevant paragraphs of the complaint state:

#### V.

As a result of Plaintiff's complaint to ALYESKA PIPELINE SERVICE COMPANY about the drug and alcohol abuse of AMERICAN GUARD AND ALERT INC.'S employees and Plaintiff's injury on September 5, 1980, ALYESKA PIPELINE SERVICE COMPANY had AMERICAN GUARD & ALERT, INC. summarily terminate the Plaintiff's employment on October 24, 1980.

#### VI.

Plaintiff's termination as a result of his complaint and injury is a violation of public policy, a breach of the implied covenant of fair dealing and good faith, not based upon good or just cause, and constitutes malice and bad faith, which give rise to punitive damages.

(emphasis in original).

■ "The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 598 (1969) (hereinafter cited as Wright & Miller). This is because courts are obliged to construe complaints liberally. *See* 2A J. Moore, Moore's Federal Practice § 12.08 (1985). "Mere vagueness or lack of detail is not ground for a motion to dismiss, but should be attacked by a motion for a more definite statement." *Id.* Generally, trial courts should give the complaint the benefit of the doubt. In *Linck v. Barokas & Martin*, 667 P.2d 171, 173 (Alaska 1983) we said: "In determining the sufficiency of the stated claim it is enough that the complaint set forth allegations of fact consistent with and appropriate to *some enforceable cause of action*." (Emphasis added). Wright and Miller make a similar point: "[T]he court is under a duty to examine the complaint to determine if the allegations provide for relief *on any possible theory*." Wright & Miller, *supra*, at 602 (emphasis added).

Had the trial court construed the complaint consistent with these authorities, it would not have dismissed the claim against AGA. Although paragraph V of the complaint alleges that Alyeska caused AGA to fire Knight, the complaint does allege that AGA did, in fact, fire Knight and goes on to allege in paragraph VI that his termination was (1) in violation of public policy, (2) in breach of an implied covenant of fair dealing and good faith, and (3) not based upon good or just cause.

The latter two claims express breach of contract theories which we have previously recognized as enforceable causes of action. *See Eales v. Tanana Valley Medical-Surgical*, 663 P.2d 958 (Alaska 1983) (certain employment contracts can be terminated only for good cause); *Mitford v. de Lasala*, 666 P.2d 1000, 1006–07 (Alaska 1983) (good faith covenant is implicit in at-will employment contract). The first claim, concerning alleged termination in violation of public policy, is in accord with a theory of recovery accepted in many states. *See generally* Lopatka, *The Emerging Law of Wrongful Discharge—A Quadrennial Assessment of the Labor Law Issue of the 80s*, 40 Bus.Law 1, 6–17 (1984) (twenty-two states prohibit discharges which violate public policy); *see generally* Note, *Protecting Employees at Will Against Wrongful Discharge: The Public Policy Exception*, 96 Harv.L.Rev.1931 (1983) (the article provides a critical discussion of the public policy theory). We have never rejected the public policy theory. Indeed, it seems that the public policy 'approach is largely encompassed within the implied covenant of good faith and fair dealing which we accepted in *Mitford*. We cannot decide whether the theory is applicable in this case without a full record. This, however, is not a reason to dismiss the complaint. Courts "should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions." Wright & Miller, *supra* at 603.

In conclusion, all three of the claims in paragraph VI of the complaint express claims under theories which, at least possibly, will afford Knight relief. The court thus erred in granting AGA's motion.

**B.** *Should the court have directed a verdict in favor of AGA?*

As mentioned above, the trial court denied AGA's motion for a directed verdict, saying that: "[R]easonable jurors could differ and could find that [Knight] was not terminated for just cause under the facts." AGA claims that this ruling constitutes an abuse of discretion.

In *Bubbel v. Wien Air Alaska, Inc.*, 682 P.2d 374, 376–77 (Alaska 1984), we said that our role in reviewing motions for a directed verdict is "not to weigh conflicting evidence or judge ... the credibility of the witnesses, but is rather to determine whether the evidence, when viewed in the light most favorable to the nonmoving party, is such that reasonable [persons] could not differ in their judgment." AGA argues that Knight's dismissal was lawful and no reasonable juror could conclude otherwise.

Knight asserts that the reason for his firing was that he "reported to Alyeska ... that AGA employees were drinking and using drugs while on duty." According to his testimony, Knight tried to report the alleged drinking and drug abuse to his superiors at AGA, but gave up because he "wasn't getting anywhere." One of the superiors (Lieutenant Bangs) reportedly "half-smiled and said, gee, I understand the Troopers are smoking marijuana down at the Academy now." Knight then told Alyeska about the alleged drinking and drug abuse. Shortly thereafter Lieutenant Bangs visited Knight. According to Knight, Bangs "was very upset and then he got me a little upset too, and he said that we don't need anybody going to Alyeska with our problems. We can take care of our own problems and he said this is a good way to have one less security guard." Reasonable jurors could infer from this testimony that Knight was fired in retaliation for informing on the other AGA employees.

The evidence to the contrary is the following statement from Mr. Goldsmith, the AGA official who actually fired Knight: "The decision [to fire Knight] was based on many things, including the interview with Jack Knight, the recommendation of his immediate supervisor, the evidence of his physical condition that he had presented to us, the incident involving his [driving off the loading ramp], numerous things."

Goldsmith's statements are an insufficient basis for concluding that reasonable jurors could only decide the case in favor of AGA. The "driving incident" refers to the auto accident Knight had while driving his squad car. But since some witnesses observed that the accident scene was poorly lit and inadequately marked, jurors could conclude that the accident was a pretext for firing Knight. Jurors could conclude the same about Knight's physical condition, since two doctors, including AGA's doctor, cleared Knight to return to work after the accident. As for the immediate supervisor's recommendation, this is not dispositive since the basis for the recommendation is not specified and it may be that the unnamed supervisor is one of the supervisors who allegedly joked about drug abuse among state troopers.

We hold that the trial court properly refused to direct a verdict in AGA's favor.

## II. *Did the Trial Court Err by Directing a Verdict in Favor of Alyeska?*

At the close of Knight's case, the trial court granted Alyeska's motion for a directed verdict on the issue of whether Alyeska tortiously interfered with Knight's employment contract. The court ruled that: (1) AGA had decided to fire Knight before it ever communicated with Alyeska, and (2) even if Alyeska interfered with Knight's employment contract, the interference was justifiable. Knight contends that this ruling was erroneous.

■ Our role in reviewing the trial court's ruling on Alyeska's motion is the same as for AGA's motion, i.e., our function is "not to weigh conflicting evidence or judge ... the credibility of the witnesses, but is rather to determine whether the evidence, when viewed in the light most favorable to the nonmoving party, is such that reasonable [persons] could not differ in their judgment." *Bubbel,* 682 P.2d at 376–77.

■ Knight alleges that Alyeska committed the tort of intentional interference with another's contract. The elements of this tort are proof that (1) a contract existed, (2) the defendant (Alyeska) knew of the contract and intended to induce a breach, (3) the contract was breached, (4) defendant's wrongful conduct engendered the breach, (5) the breach caused the plaintiff's damages, and (6) the defendant's conduct was not privileged or justified. *See Bendix Corp. v. Adams,* 610 P.2d 24, 27 (Alaska 1980).

### A. *Alleged interference # 1—Knight's employment contract.*

Knight has not introduced enough evidence to show that Alyeska's conduct caused the breach of Knight's employment contract. Knight states that Goldsmith told him that he (Goldsmith) would "have to get with Mr. Wellington [from Alyeska]" before he could determine whether Knight was going to be terminated. But at no place does Knight offer evidence that Goldsmith actually conferred with Wellington to decide together that AGA should terminate Knight's employment. On the contrary, the only evidence on the subject shows that Goldsmith made the decision before meeting with Wellington. Knight himself says in his brief that:

> It is true that both Wellington [from Alyeska] and Goldsmith [from AGA] testified that the decision to terminate Knight as a security guard at an operational facility was made by Goldsmith prior to the final meeting between him and Wellington, and that Wellington *only* "concurred" with the decision that Goldsmith had reached prior to coming to [Wellington's office.]" Tr. 317, 342 However, Goldsmith also testified that this meeting was prior to Knight's termination. Tr. 333. Despite the disclaimers by Wellington and Goldsmith, the jury could infer that at this meeting Wellington did, in fact, have *some* influence in the final decision to terminate Knight from employment with AGA.

(emphasis added).

■ Merely concurring with a decision already made is not enough. Knight's own brief quotes a portion of Prosser which

indicates that the question before the jury is whether "the defendant has played a *material and substantial part* in causing the plaintiff's loss." W. Prosser, *Law of Torts* 935 (4th ed. 1971). If the defendant's role must have been material and substantial, a finding by a jury that Alyeska merely had "some influence" would be insufficient. Had Knight introduced evidence that Alyeska instigated the termination the outcome would be different. But Knight has shown only acquiescence on Alyeska's part. Hence, the directed verdict was proper.

### B. *Alleged interference #2—Knight's proposed reassignment.*

Knight also argues that Alyeska interfered with his contractual relations by refusing to allow AGA to reassign him to a security position with limited duties. After the decision was made to terminate Knight, Goldsmith recommended to Wellington that he continue Knight's employment as a guard with a limited assignment, but Wellington rejected the proposal. According to Goldsmith, the AGA-Alyeska contract did not contain provisions for special assignments.

Knight replies that: "the contract was not introduced in evidence and other than this conclusory opinion concerning what the contract provided there was no evidence that AGA could not have retained Mr. Knight in some capacity on the pipeline...." Knight, however, has the burden of proof on this issue. The first requirement of the contractual interference tort is that the plaintiff have an actual or potential contract. If the Alyeska-AGA contract did not provide for a position of the type Knight wanted, then Knight did not have, or could never have had, a contract with which Alyeska could interfere. Since Knight has not even shown that a contract was possible, no jury could hold that Alyeska interfered with Knight's contractual relations.

### III. *Did the Trial Court Err by Excluding Fay Wheeler's Testimony?*

The trial court excluded Knight's testimony that the AGA personnel manager, Fay Wheeler, told Knight that the reason for his termination was: "Mr. Wellington just wanted you terminated." The record was unclear as to how Wheeler obtained this information, i.e., whether it was based on conversations with Goldsmith, Bangs, Wellington, someone else; was merely her own opinion; or was an untrue but convenient explanation. The court stated that the testimony was inadmissible "until the foundation is laid as to how she obtained the information."

The first issue is whether the evidence is relevant. Under Alaska Evidence Rule 402 "[a]ll relevant evidence is admissible" unless an exception applies. The evidence is relevant because it provides a possible explanation for why AGA fired Knight.

The second issue is whether an exception applies. Here the only germane exception is the one for hearsay. Since Knight is using a statement made out of court for the truth of the matter asserted, e.g., that Wellington wanted him fired, it is arguably hearsay. Knight contends that the testimony is admissible under Alaska Evidence Rule 801(d)(2)(D). Rule 801(d)(2)(D) states that a statement is not hearsay if "[t]he statement is offered against a party and is ... (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship." Both AGA and Alyeska argue that Wheeler was not acting within the scope of her employment.

We agree with Knight. The firing of Knight was within the scope of Wheeler's employment. She was the manager of personnel administration at AGA, and she was the AGA employee who was "instructed" to fire Knight. Rule 801(d)(2)(D) does not require that the agent have the authority to make the specific statement in dispute. This is provided for in Rule

801(d)(2)(C).[1] The fact that the reasons for firing Knight merely *concerned* her employment duties was sufficient. *See Rutherford v. State*, 605 P.2d 16, 24–25 (Alaska 1979) (investigators did not need specific authority to speak for the state on issue of driver's negligence).

We disagree with the trial court that Knight must show the basis for Wheeler's statement. In *Rutherford,* we adopted the majority view that "an admission is not inadmissible because it is not based on firsthand knowledge or is made in the form of an otherwise inadmissible opinion." *Id.* at 24–25. Hence, a showing of how Wheeler obtained her information is not required because the evidence is admissible regardless of its basis, e.g., even if it is only her opinion. The fact that Wheeler was an employee making a statement about a matter within the scope of *her own* responsibilities provides the statement with enough credibility to go to the jury. This is the policy behind the majority view. *See, id.* at 25 n. 24. Admitting Wheeler's testimony does not, of course, establish its truthfulness. AGA is always free to argue to the jury that the statement is false.

With respect to Alyeska, the statement is not admissible. According to Rule 801(d)(2)(D), the statement must have been made by the agent of the party against whom it is introduced. Wheeler was the personnel manager for AGA, not Alyeska. Because nothing else in the record or in the briefs establishes that Wheeler was acting as Alyeska's agent or servant, no basis exists for applying 801(d)(2)(D).

## IV. *Attorney's Fees*

Alaska Civil Rule 54(d) states that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." We have held that this means a prevailing party may recover attorney's fees. *DeWitt v. Liberty Leasing Co. of Alaska,* 499 P.2d 599, 601 (Alaska 1972).

Because we hold that Knight's claim against AGA should not have been dismissed, AGA is no longer a "prevailing party." Hence, it is not entitled to attorney's fees.

Alyeska is a prevailing party and is therefore entitled to attorney's fees. Knight argues that Alyeska should have itemized its fees instead of merely submitting an affidavit which listed only the hours worked and the total fees requested. We disagree. We have repeatedly stated that we will not interfere with a trial judge's fee award unless it is "a clear abuse of discretion." *See, e.g., North Star v. Fairbanks North Star Borough,* 621 P.2d 1329, 1335 (Alaska 1981). This rule also extends to a trial judge's decision to request, or not to request, an itemization. The amount awarded, $15,000, is reasonable in light of the evident time and effort expended by counsel, including participating in two (because of a mistrial) truncated trials and considerable pre-trial discovery and motion practice. Hence, the trial court did not abuse its discretion by failing to request an itemization.

The judgment is AFFIRMED as to Alyeska and REVERSED as to AGA.

---

**1.** This rule provides that a statement is not hearsay if "[t]he statement is offered against a party and is ... (C) a statement by a person authorized by him to make a statement concerning the subject."