Richard B. ELDRIDGE,
Plaintiff–Appellant,

and

Kathleen A. Eldridge; Richard N. Eldridge; Vincent S. Eldridge,
Plaintiffs,

v.

FELEC SERVICES, INC.,
Defendant–Appellee.

No. 89–35509.

United States Court of Appeals,
Ninth Circuit.

Submitted May 8, 1990 *.

Decided Nov. 28, 1990.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Richard H. Friedman and Jeffrey A. Friedman, Friedman & Friedman, Anchorage, Alaska, for plaintiff-appellant.

Mary K. Hughes, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, Alaska, for defendant-appellee.

Before FARRIS, PREGERSON and BOOCHEVER, Circuit Judges.

FARRIS, Circuit Judge:

Richard B. Eldridge appeals the district court's dismissal of his retaliatory discharge action founded on Alaska tort and contract law. Finding that Eldridge's employment relationship was governed by a collective bargaining agreement, the district court held that the state law claim was preempted by federal labor law. We reverse and remand.

## FACTS

Eldridge was an employee of Felec Services, Inc. until his dismissal. During the course of his employment, Eldridge suffered an injury from exposure to radio frequency radiation that made him "unavailable" for work for several weeks. Felec Services contends that Eldridge was dismissed pursuant to a collective bargaining provision requiring dismissal under these circumstances. Eldridge claims that he was dismissed in retaliation for filing a workers' compensation claim for his injuries.

Eldridge filed a complaint in state court alleging discharge in violation of public policy. Felec Services removed the case to

federal court on diversity grounds. In district court Eldridge argued that his termination was in violation of public policy and thus a breach of the covenant of good faith and fair dealing implied by state law into every employment contract. Eldridge also alleged that Felec Services had committed an independent tort of retaliatory discharge in violation of public policy. The district court granted Felec Services' motion for summary judgment, holding that the contract claim was preempted by section 301 of the Labor Management Relations Act. *See* 29 U.S.C. § 185. The court further held that Alaska courts do not recognize an independent tort for discharge in violation of public policy.

## DISCUSSION

■ Section 301 of the LMRA preempts state law claims "founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective bargaining agreement.'" *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394, 107 S.Ct. 2425, 2431, 96 L.Ed.2d 318 (1987) (*quoting International Bhd. of Elec. Workers, AFL–CIO v. Hechler*, 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 2167 n. 3, 95 L.Ed.2d 791 (1987)). Preemption of state law actions is designed to foster "uniform, certain adjudication of disputes over the meaning of collective-bargain agreements," *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410–11, 108 S.Ct. 1877, 1884, 100 L.Ed.2d 410 (1988), and to ensure the "effectiveness of arbitration," *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 219, 105 S.Ct. 1904, 1915, 85 L.Ed.2d 206 (1985). Section 301 does not, however, displace all state law governing the labor-management relationship. Congress did not intend for section 301 to preempt "state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 212, 105 S.Ct. at 1912. Thus, under section 301, states remain free to ensure that substantive rights afforded

workers within their state, either by statute or public policy, are not infringed so long as "adjudication of those rights does not depend upon the interpretation of [collective bargaining] agreements." *Lingle,* 486 U.S. at 409, 108 S.Ct. at 1883.

Under Alaska state law a cause of action for breach of the implied covenant of good faith and fair dealing is appropriate to ensure that the rights and duties of the Alaska Workers' Compensation Act are respected. We find that adjudication of this contract cause of action does not require an analysis of the collective bargaining agreement and, thus, is not preempted by section 301. Because the district court will have an opportunity to assess the full scope of Eldridge's accompanying tort action upon remand, we decline to rule at this time on the determination that Alaska does not provide an independent tort action for retaliatory discharge.

### A. Breach of the Covenant of Good Faith

■ The Alaska Workers' Compensation Act reflects a state policy for "providing, in the most efficient, most dignified, and most certain form, financial and medical benefits for the victims of work-connected injuries which an enlightened community would feel obliged to provide." *Searfus v. Northern Gas Co.,* 472 P.2d 966, 969 (Alaska 1970). The Act creates substantial rights and duties which apply to all employment relationships [1] and may not be waived by any employee. Alaska Stat. §§ 23.30.020, 23.30.245(b). The employer's failure to comply with the provisions of the Act may result in civil and criminal penalties. Alaska Stat. §§ 23.30.075, 23.30.085.

■ The dismissal of an employee in retaliation for the employee's pursuit of his rights under the Alaska Workers' Compensation Act abrogates the statute's purpose. The majority of states with mandatory workers' compensation acts have expressed a public policy prohibiting retaliatory discharge for filing compensation claims. 2A

---

1. Only "part-time baby sitters, cleaning persons, harvest help and similar part-time or transient help," as defined by regulation, are not covered by the Workers' Compensation Act. Alaska Stat. § 23.30.230.

A. Larson, *Larson's Workmen's Compensation Law* § 68.36(a) (1989). As the Nevada Supreme Court noted in *Hansen v. Harrah's*, 675 P.2d 394, 397 (Nev.1984):

We know of no more effective way to nullify the basic purposes of Nevada's workmen's compensation system than to force employees to choose between a continuation of employment or the submission of an industrial claim.

*See also Murphy v. City of Topeka–Shawnee County Dept. of Labor Services*, 630 P.2d 186, 192 (Kan.App.1981) (public policy against retaliation implied from statutory scheme). Given the mandatory and nonnegotiable nature of the Alaska Workers'' Compensation Act, a discharge in retaliation for the assertion of rights under this Act violates Alaska public policy. *See Leudtke v. Nabors Ala. Drilling, Inc.*, 768 P.2d 1123, 1132 (Alaska 1989) (retaliatory discharge violates Alaska public policy if the retaliatory motive strikes "at the heart of a citizen's social rights, duties, and responsibilities" (quoting *Palmateer v. International Harvester*, 85 Ill.2d 124, 52 Ill. Dec. 13, 15–16, 421 N.E.2d 876, 878–79 (1981)).

▮ Alaska courts have held that a discharge in violation of public policy is adjudicated appropriately as a breach of the implied covenant of good faith and fair dealing. *Reed v. Municipality of Anchorage*, 782 P.2d 1155, 1158 (Alaska 1989) (violation of policy prohibiting retaliatory discharge of "whistleblowers"); *Leudtke*, 768 P.2d at 1130 (violation of policy protecting employee privacy); *Knight v. American Guard & Alert, Inc.*, 714 P.2d 788, 792 (Alaska 1986) (same). The covenant of good faith is implied by law into every employment relationship, and prohibits discharges in violation of public policy even in at-will employment contracts. *Reed*, 782 P.2d at 1158.

▮ Alaska courts characterize a retaliatory dismissal in violation of the implied covenant of good faith as a contract cause of action. *See Reed*, 782 P.2d at 1158. Preemption analysis under section 301, however, does not turn on whether the state cause of action sounds in contract or tort. Such an approach would mistakenly "elevate form over substance." *Allis–Chalmers Corp.*, 471 U.S. at 211, 105 S.Ct. at 1911, 85 L.Ed.2d 206. Rather, section 301 directs us to determine whether adjudication of the rights afforded workers by the state depends upon an interpretation of the collective bargaining agreement.[2] We must, therefore, determine whether Eldridge's contract claim, based on a nonnegotiable state public policy mandated into every employment relationship, requires interpretation of the negotiated provisions of the collective bargaining agreement.

Defendants rely on *Allis–Chalmers Corp.*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206, where an employee bound by a collective bargaining agreement alleged that the employer had acted in bad faith in denying a benefits claim. The employer's duty to provide benefits derived from a negotiated insurance agreement contained in the collective bargaining agreement. *Id.* at 203–04, 105 S.Ct. at 1907. The Court held that the employee's state law tort action for breach of the implied covenant of good faith was preempted because determining the scope of the employer's duty to provide benefits would require an interpretation of the collective bargaining agreement. *Id.* at 218–19, 105 S.Ct. at 1914–15. The Court concluded that "state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are preempted by

---

**2.** Contract causes of action withstand preemption if they do not entangle the court in deciphering the terms of a collective bargaining agreement. *See Wells v. General Motors Corp.*, 881 F.2d 166, 173–74 (5th Cir.1989) (state law contractual rights are not preempted if they are independent of rights created by collective bargaining agreement) *cert. denied*, — U.S. —,

110 S.Ct. 1959, 109 L.Ed.2d 321 (1990); *Overby v. Chevron USA, Inc.*, 884 F.2d 470, 474 (9th Cir.1989) (state contract claims for breach of the implied covenant of good faith not preempted when arising under an expired collective bargaining agreement); *see also Caterpillar*, 482 U.S. at 386, 107 S.Ct. at 2425–26.

those agreements." *Id.* at 213, 105 S.Ct. at 1912.

 The covenant of good faith claim pursued by Eldridge differs from that preempted in *Allis–Chalmers.* The scope of the duty in *Allis–Chalmers* was defined by the express terms of the collective bargaining agreement itself. In contrast, Eldridge's claim does not depend on any right or duty originating from the negotiated collective agreement. Rather, Eldridge's claim is founded upon the nonnegotiable, mandatory conditions of the Alaska Workers' Compensation Act and the state requirement that the rights and duties established under the Act be respected. Unlike in *Allis–Chalmers*, Eldridge's contract claim for retaliatory discharge would exist even in the absence of a collective bargaining agreement. The nonnegotiable right not to be discharged in retaliation for filing a workers' compensation accrues to employees "as individual workers, not as members of a collective organization." *See Metropolitan Life Ins. Co. v. Mass.,* 471 U.S. 724, 755, 105 S.Ct. 2380, 2397, 85 L.Ed.2d 728 (1985).

Eldridge's claim also differs from recent Ninth Circuit cases finding that section 301 preempts the Californian common law cause of action for breach of the implied covenant of good faith and fair dealing. *See, e.g., Cook v. Lindsay Olive Growers,* 911 F.2d 233, 238–39 (9th Cir.1990); *Jackson v. Southern Cal. Gas,* 881 F.2d 638, 644 (9th Cir.1989); *Chmiel v. Beverly Wilshire Hotel,* 873 F.2d 1283, 1286 (9th Cir. 1989); *Newberry v. Pacific Racing Ass'n,* 854 F.2d 1142, 1147 (9th Cir.1988); *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 999–1001 (9th Cir.1987). The claim at issue in those cases was one crafted by the California courts to protect the job security of employees who at common law could be fired at will. *See Newberry,* 854 F.2d at 1147. As we pointed out in *Newberry:*

> Generally, no comparable lack of job security exists for unionized employees protected by a collective bargaining agreement. "Thus, section 301 preempts the implied covenant when an employee has comparable job security under a collective bargaining agreement."

*Id.* (quoting *Young,* 830 F.2d at 999) (citations omitted). The rationale for such preemption was set forth in *Young:*

> The [California] implied covenant tort is a "regulation of the employment relationship." *Garibaldi,* 726 F.2d at 1374. It implicates the employee's job security rights under the collective bargaining agreement and duplicates the protection federal labor policy posits in the collective bargaining process. It furthers no state policy independent of employment.

830 F.2d at 1000. In addition, the California implied covenant was found to be subject to waiver. *Id.* at 1001.

The cause of action asserted by Eldridge, for breach of the implied covenant of good faith and fair dealing under Alaskan common law, differs with respect to each of the factors upon which the preemption holdings of *Young* and its progeny were based.[3] The cause of action under Alaskan law does not constitute a mere "regulation of the employment relationship." Rather, the claim appropriately is directed towards ensuring that the rights and duties specified in the Alaska Workers' Compensation Act are not nullified through wrongful discharge. Such rights are not duplicative of the "protection federal labor policy posits in the collective bargaining process." Moreover, the rights and duties under the Alaska Workers' Compensation Act, as well as the implied covenant that the employee not be discharged in retaliation for the exercise of such rights, are nonnegotiable. As such, the court need not look to the collective bargaining agreement to determine if a waiver or alternative provision exists.

The cause of action for breach of an implied covenant of good faith and fair

---

**3.** The dissent, in asserting that all claims based on a covenant of good faith and fair dealing are preempted if the collective bargaining agreement contains terms governing job security, fails to consider the rationale underlying such precedent and the differences between the covenant of good faith claim at issue in those cases and the covenant of good faith claim asserted by Eldridge under Alaskan law.

dealing at issue parallels the claim at issue in *Lingle*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410. In *Lingle*, the Supreme Court addressed whether Section 301 preempted an Illinois tort action for retaliatory discharge for filing a worker's compensation claim. The retaliatory discharge claim required a showing that (1) the employee was discharged or threatened with discharge and (2) the employer's motive was to interfere with or deter the employee's exercise of his rights under the worker's compensation act. *Id.* at 407, 108 S.Ct. at 1882. The Court held that the retaliatory discharge claim was not preempted:

> Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective bargaining agreement. To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge[ ]; this purely factual inquiry likewise does not turn on the meaning of any provision of the collective-bargaining agreement.

*Id.* (citation omitted). The Court rejected the holding of the court of appeals that the claim was preempted because the "just cause" clause of the bargaining agreement raised the identical issue presented by the plaintiff's state law claim. The Court noted that section 301 preemption only requires that federal law be the basis for interpreting collective bargaining agreements, and that it "says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." *Id.* at 409, 108 S.Ct. at 1883.

Under Alaska law, a breach of the implied covenant of good faith occurs if the employer discharged the employee in retaliation for conduct protected by public policy. *See Reed*, 782 P.2d at 1158. As in *Lingle*, the motive of the employer is the primary consideration. It may be determined without reference to any term of the collective bargaining agreement.[4]

Felec Services argues that the collective bargaining agreement is in fact at issue because the agreement provides the basis for Eldridge's termination. We reject this argument. To defend the claim against it, Felec Services need only show that it was motivated to discharge Eldridge for reason other than to retaliate for the assertion of rights under the Alaska Workers' Compensation Act. It is irrelevant whether the company's reliance on the labor agreement was reasonable or whether its interpretation of the agreement was correct. The sole issue is the motivation for the discharge. Because the inquiry is the same as the determination required in *Lingle*, we hold that Eldridge's claim for breach of the implied covenant is not preempted.

### B. Tortious Wrongful Discharge

Eldridge also argues that Alaska recognizes a tort action for retaliatory discharge similar to the type of claim held not preempted in *Lingle*. The district court held that Alaska did not recognize an independent retaliatory discharge tort, and that the claim was subsumed in the action for breach of the implied covenant of good faith.

In *Knight*, 714 P.2d at 792, the Alaska Supreme Court reversed a trial court's dismissal of a claim for tortious discharge in violation of public policy. The court held that the complaint stated a valid contract

---

**4.** The dissent misconstrues *Lingle* as turning on the ambiguity of the collective bargaining agreement. *Lingle* found that section 301 did not require preemption because the state law cause of action could be decided irrespective of the coverage of the collective bargaining agreement. The Court noted:

> even if dispute resolution pursuant to a collective bargaining agreement, on the one hand,

and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for section 301 preemption purposes.

*Lingle,* 486 U.S. at 409–410, 108 S.Ct. at 1883.

action for breach of the implied covenant of good faith and fair dealing. As to the existence of a separate tort theory, the court equivocated:

> We have never rejected the public policy theory. Indeed, it seems that the public policy approach is largely encompassed within the implied covenant of good faith and fair dealing which we accepted in *Mitford v. de LaSala,* 666 P.2d 1000 (Alaska 1983).

*Id.* In *Leudtke,* 768 P.2d at 1130, the court repeated its language in *Knight,* but again avoided an express determination that the exclusive remedy for wrongful termination in violation of public policy was the contract action.

Even if Alaska does not recognize an independent tort for retaliatory discharge in violation of public policy, the Alaska Supreme Court has not foreclosed the possibility that tort remedies may be encompassed within the contract action. Because we find that the contract action was not preempted, the district court on remand will have the opportunity to determine the full scope of that action and the extent to which it may provide the remedies sought by Eldridge in his tort claim. We therefore decline to rule at this time on the district court's determination that Alaska does not provide an independent tort action for retaliatory discharge.

REVERSED and REMANDED.

BOOCHEVER, Circuit Judge, dissenting:

Richard B. Eldridge was exposed to radio frequency radiation on September 14, 1983, while employed by Felec Services, Inc. He was admitted to a hospital for observation between September 16 and 18, 1983, and subsequently underwent further medical observation. When he failed to report back to work after his personal leave expired on October 17, 1983, Felec fired him, claiming Eldridge failed adequately to notify the company of his inability to return to work. Because I believe that in light of these facts, Eldridge's cause of action for breach of the covenant of good faith and fair deal-

ing requires interpretation of the collective bargaining agreement and thus is preempted, I respectfully dissent.

To analyze whether federal law preempts a cause of action for breach of the covenant of good faith and fair dealing, we examine the collective bargaining agreement (CBA) to determine whether it contains terms governing job security; if it does, the claim is preempted. *Cook v. Lindsay Olive Growers,* 911 F.2d 233, 238–39 (9th Cir.1990).

> The implied covenant tort is designed to protect the job security of employees who at common law could be fired at will. Generally, no comparable lack of job security exists for unionized employees. Thus section 301 preempts the implied covenant when an employee has comparable job security under a collective bargaining agreement.

*Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 999 (9th Cir.1987) (citations omitted). *See Jackson v. Southern California Gas Co.,* 881 F.2d 638, 645 (9th Cir.1989); *Chmiel v. Beverly Wilshire Hotel Co.,* 873 F.2d 1283, 1286 (9th Cir.1989); *Newberry v. Pacific Racing Ass'n,* 854 F.2d 1142, 1147 (9th Cir.1988).

In Eldridge's case, the CBA's job security provisions are unusually detailed, as applied to a failure to report for work after an absence. Section 8.02 of the CBA provides in part:

> *Paragraph 8.02 Continuity of Service*
>
> The continuous service credit and seniority of an employee will be broken under the following conditions, and when so broken such employee shall be for all purposes considered a new employee if and when rehired:
>
> (a) Resignation or other voluntary termination of employment.
>
> (b) Absence in excess of three (3) consecutive working days without notice, either by telephone or written message by messenger to the immediate Supervisor, Activity Manager, Duty Manager, or other managerial personnel, unless satisfactory evidence of inability to do so is shown.
>
> (c) Discharge for just cause.

(d) Unauthorized absence after the time limit of an authorized vacation or an approved absence, unless satisfactory evidence of inability to report for work is shown.

. . . . .

I believe the claim for breach of an implied covenant of good faith requires construction of those CBA provisions, and is necessarily preempted.

*Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), does not require the result reached by the majority. *Lingle* differs from this case not only in the cause of action (in *Lingle,* an independent tort, in *Eldridge,* a contract claim) but also in the terms of the CBA. Because the CBA in *Lingle* is vague on reasons for discharge, providing only that just cause is required, no interpretation of the collective bargaining agreement was required for resolution of the employee's claim. The employee would have to show sufficient facts to infer (1) that "he was discharged or threatened with discharge," and (2) that "the employer's motive … was to deter him from exercising his rights." *Lingle,* 486 U.S. at 407, 108 S.Ct. at 1882. These purely factual questions would not require the interpretation of the CBA. *Id.* To *defend* against the retaliatory discharge claim, the "employer must show that it had a nonretaliatory reason for the discharge." *Id.* In *Lingle,* "this purely factual inquiry … does not turn on the meaning of any provision of a collective bargaining agreement," *id.,* because the CBA did not provide specifically legitimate reasons for discharge, providing instead only that discharge must be for just cause. Thus, both under Lingle's tort claim and the employer's defense of "just cause," the focus was upon the employer's motive for discharging Lingle, not a construction of the CBA.

By contrast, in this case, Felec's defense depends on the CBA. Felec contends that it had a nonretaliatory reason for discharge *under the CBA,* i.e. § 8.02(b) and (d). It argues that Eldridge was absent without

authorization for more than three days without explanation and that he was absent without authorization after an approved absence without presenting satisfactory evidence of inability to report for work. In the course of litigating Eldridge's claim, a court necessarily must interpret the CBA to evaluate Felec's defense. By contrast, in *Lingle* the court could evaluate whether there was a nonretaliatory reason without resort to the CBA, because the CBA provided no specific reasons for discharge. Eldridge's claim is thus not independent of the "collective-bargaining agreement in the sense of 'independent' that matters for § 301 preemption purposes," because resolution of his state-law claim does require that we construe the CBA. *See Lingle,* 486 U.S. at 407, 108 S.Ct. at 1882.

In sum, because I believe that the relevant inquiry is whether the CBA contains applicable terms governing job security, I would hold that Eldridge's action for breach of the covenant of good faith and fair dealing was preempted, due to the CBA's specific provisions regarding job security.