Maria SINGH, Plaintiff,

v.

**TRUSTEES OF the ESTATE OF William Charles LUNALILO, Lunalilo Home, United Public Workers Local 646, AFSCME, AFL–CIO, John Does 1–10, Doe Corporations 1–10, Doe Partnerships 1–10, Doe Non–Profit Organizations 1–10, and Doe Governmental Agencies, Defendants.**

**Civ. No. 91–00141 DAE.**

United States District Court, D. Hawaii.

Sept. 25, 1991.

judgment on September 23, 1991. Khaled S. Mujtabaa, Esq. appeared on behalf of the plaintiff, and Ernest C. Moore, Esq. appeared on behalf of the defendants. After reviewing the motion and the supporting and opposing memoranda and hearing oral arguments of counsel, the court GRANTS defendants' motion to dismiss.

## BACKGROUND

Plaintiff Maria Singh was employed as a nurse's aide by defendant Lunalilo Home, a non-profit resident care home for persons of Hawaiian ancestry. Singh's employment was governed by a collective bargaining agreement ("CBA") between Lunalilo Home and the United Public Workers Union Local 646 ("UPW"), AFSCME, and AFL–CIO. Section 8 of the CBA provided that Lunalilo Home could suspend or discharge employees for "just cause." Singh's employment extended from 1983 until her termination in 1989. On at least one occasion, Singh complained to her superiors about various problems arising from alleged understaffing.

Singh was also a member of the defendant UPW. In 1978, Singh participated in a union meeting organized to raise concerns about working conditions to the local union agent. At this meeting, Singh and some of the other employees of Lunalilo Home discussed the alleged understaffing problem and filed a written grievance.

On February 20, 1989, Singh changed the diaper of Mrs. Lillian Marshall, an elderly wheelchair-bound patient suffering from Alzheimer's disease. After this procedure, Singh touched Mrs. Marshall's face. The manner of this touching is disputed by the parties. Singh claims that she "gently patted" Mrs. Marshall on her cheeks and told her "good girl" as a way of consoling her for any discomfort experienced in the diaper changing. On the other hand, a resident of Lunalilo Home informed the Lunalilo Home Administrator that Singh "slapped" Mrs. Marshall's face.

On February 24, 1989, Singh was placed on immediate suspension pending investigation of the alleged resident abuse incident. During the investigation, Lunalilo Home

Khaled S. Mujtabaa, Honolulu, Hawaii, for plaintiff.

Ernest C. Moore, III, John L. Knorek, Torkildson, Katz, Jossem, Fonseca, Jaffe & Moore, Honolulu, Hawaii, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

DAVID A. EZRA, District Judge.

This court heard defendants' motion to dismiss, or in the alternative, for summary

discovered two prior alleged instances of resident abuse by the plaintiff. UPW represented Singh during the investigation. On February 27, 1991, an investigatory meeting was held at which Singh denied all the accusations against her. On March 14, 1991, as a result of a finding of resident abuse, Lunalilo Home discharged Singh.

Following Singh's termination, the UPW requested an extension of time within which to consider filing a grievance under the CBA. Lunalilo Home granted an extension until March 31, 1989, but no grievance was filed before the deadline. On April 25, 1989, a UPW representative informed the plaintiff that the time limit to file a grievance had expired.

On May 18, 1989, Singh filed unfair labor practice charges under the National Labor Relations Act against Lunalilo Home and the UPW. She claimed that Lunalilo Home fired her because of her involvement in the union grievance meeting in 1988 in which employees complained about the understaffing problem. Singh also claimed that the UPW did not properly process her grievance, and therefore failed to meet its duty of fair representation. Both of these unfair labor practice charges were rejected by the Regional Director of the National Labor Relations Board ("NLRB") on June 1, 1989. Her appeal to the General Counsel of the NLRB was denied on July 25, 1989.

On January 16, 1991, Singh filed a complaint in the Circuit Court of the First Circuit, State of Hawaii, alleging: (1) wrongful discharge, (2) intentional infliction of emotional distress, (3) negligent infliction of emotional distress, (4) retaliatory discharge, and (5) failure of the UPW to provide fair and adequate representation. On March 8, 1991, this action was removed from state court to this court. On August 8, 1991, the defendants submitted a motion to dismiss, or in the alternative, for summary judgment.

## DISCUSSION

### I. Standards for Fed.R.Civ.P. 12(b)(6) Dismissal and Summary Judgment

The court cannot dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6) " 'unless it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.' " *Sun Savings & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir.1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979).

Because this court grants defendants' motion to dismiss on all five counts in the complaint, the court does not address the motion for summary judgment.

### II. Counts I, II, and III—Wrongful Discharge, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress

#### A. Introduction

Plaintiff Singh contends that the termination of her employment at defendant Lunalilo Home was improper because she did not abuse the resident at issue, and that Lunalilo Home and the UPW failed to fairly and adequately investigate the incident.

#### B. Section 301 Preemption

Defendants contend that section 301 of the Labor Management Relations Act, 29

U.S.C. § 185, preempts Singh's claim. Section 301(a) provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Section 301 provides for federal court jurisdiction over controversies related to collective bargaining agreements. Section 301 has been interpreted as authorizing "federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements." *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957). The Supreme Court has rejected attempts by state courts to construe collective bargaining agreements according to state contract law. *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

The Supreme Court has emphasized that the application of federal law for interpreting collective bargaining agreements is prompted by the need for uniformity and predictability in this area. The possibility of the terms of a collective bargaining agreement having different meanings under state and federal law is unacceptable. Without the application of uniform federal law, the negotiation, interpretation, and administration of collective bargaining agreements would be total chaos.

There are dozens, if not hundreds, of federal cases addressing the issue of the scope of section 301 preemption on state law claims. The cases seem to be fairly evenly divided between those favoring preemption and those favoring survival of the state law claim. Unfortunately, the distinguishing factors between these two groups of cases have been far from clear. In a recent section 301 preemption case, the Ninth Circuit commented that "section 301 has been the precipitate of a series of often contradictory decisions, so much so that 'federal preemption of state labor law has been one of the most confused areas of federal court litigation.'" *Galvez v. Kuhn*, 933 F.2d 773, 776 (9th Cir.1991) (citing Note, *The Need for a New Approach to Federal Preemption of Union Members' State Law Claims*, 99 Yale L.J. 209, 209 (1989)).

### 1. Section 301 Preemption—Recent Supreme Court and Ninth Circuit Decisions

One of the seminal cases regarding section 301 is *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). In that case, the plaintiff was an employee of the defendant and was a member of a union which had a collective bargaining agreement with the defendant employer. The collective bargaining agreement included a group health and disability plan which included benefits for nonoccupational injuries. After the plaintiff incurred a nonoccupational injury, he encountered resistance in collecting his disability benefits. Thus, the plaintiff sued his employer for a breach of its duty to act in good faith and deal fairly with his disability claim.

Prior to *Allis–Chalmers*, section 301 preempted any state rule that purported to define the meaning or scope of a term in a collective bargaining agreement in a suit alleging a contract violation. 471 U.S. at 210, 105 S.Ct. at 1911. The Supreme Court in *Allis–Chalmers* extended this theory to tort claims. The Court reasoned that if the federal goal of uniformity of interpretation of collective bargaining agreements is to be achieved, the preemptive effect of section 301 must apply whether the state law issues arise in a suit for breach of contract or a suit sounding in tort liability. *Id.* at 211, 105 S.Ct. at 1911. "Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract." *Id.*

Nonetheless, the Court recognized that section 301 does not preempt every state law claim which is remotely related to a collective bargaining agreement. The Court noted that "it would be inconsistent with congressional intent under that section to preempt state rules that proscribe

conduct, or establish rights and obligations, independent of a labor contract." 471 U.S. at 212, 105 S.Ct. at 1912 (footnote omitted). To determine whether a state law claim is preempted by section 301, the Court examined whether the state law claim was "inextricably intertwined" with the terms of the collective bargaining agreement. *Id.* at 213, 105 S.Ct. at 1912. If the state contract or tort law purports to define the meaning of a term in the labor agreement, then the state law is preempted. *Id.*

In regard to the tort claim at issue in *Allis–Chalmers,* the Court held that section 301 preempted the state tort action for breach of the duty of good faith because any attempt to assess liability would have involved interpretation of the collective bargaining agreement. 471 U.S. at 217–19, 105 S.Ct. at 1914–15. The Court emphasized that section 301 preemption was necessary to preserve the central role of arbitration in the collective bargaining agreement process:

> Since nearly any alleged willful breach of contract can be restated as a tort claim for breach of a good-faith obligation under a contract, the arbitrator's role in every case could be bypassed easily if § 301 is not understood to pre-empt such claims. Claims involving vacation or overtime pay, work assignment, unfair discharge—in short, the whole range of disputes traditionally resolved through arbitration—could be brought in the first instance in state court by a complaint in tort rather than in contract. A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its· effectiveness, as well as eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance.

471 U.S. at 219–20, 105 S.Ct. at 1915 (citation omitted).

Another important Supreme Court case construing section 301 preemption is *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). In *Lingle,* the defendant employer discharged the plaintiff employee for allegedly filing a false worker's compensation claim. The plaintiff's union filed a grievance pursuant to the collective bargaining agreement which covered the plaintiff's employment. As a result of arbitration, the plaintiff was reinstated with full back pay. *Id.* at 1879. At the same time, however, plaintiff pursued a state law tort claim for retaliatory discharge in federal court. Plaintiff claimed that she had been discharged for exercising her rights under the state worker's compensation laws.

The Supreme Court in *Lingle* held that section 301 did not preempt the plaintiff's state law claim for retaliatory discharge because the claim could be resolved without construing the collective bargaining agreement; the state law claim was "independent" of the labor agreement. *Id.* at 1882–83. The Court indicated that this result was correct even though the state law claim might implicate the exact same analysis of the facts as a dispute pursuant to the collective bargaining agreement. *Id.* "[A]s long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id.* at 1883 (footnote omitted). In addition, the Court opined that in a typical retaliatory discharge case a court could resolve the claim without interpreting the collective bargaining agreement. *Id.* at 1885.

The Ninth Circuit has also recently addressed the issue of section 301 preemption. *Newberry v. Pacific Racing Ass'n,* 854 F.2d 1142 (9th Cir.1988). In that case, the plaintiff was discharged for alleged misappropriation of funds from her employer race track. The plaintiff contended that she was terminated without "just cause," in violation of the applicable collective bargaining agreement. The plaintiff brought claims for breach of an implied covenant of good faith and fair dealing and intentional infliction of emotional distress, among others.

The Ninth Circuit held that these claims were preempted by section 301. Applying the tests of *Allis–Chalmers* and *Lingle,*

the court inquired whether the state law claims required the interpretation of, or substantially depended upon analysis of, terms of the collective bargaining agreement. 854 F.2d at 1147. In regard to the claim for intentional infliction of emotional distress, the court stated that the claim arose out of plaintiff's termination and that a determination of the validity of her claim would require the court to decide whether the discharge was justified under the collective bargaining agreement. *Id.* at 1149. Because the court could not analyze her claim without interpreting the collective bargaining agreement, the claim was preempted by section 301. *Id.* at 1149–50.

In the case at hand, plaintiff Singh relies almost exclusively on the more recent Ninth Circuit case of *Eldridge v. Felec Services, Inc.*, 920 F.2d 1434 (9th Cir.1990). In *Eldridge*, the defendant employer discharged the plaintiff employee allegedly for missing too much work. Contending that he was fired in retaliation for filing a worker's compensation claim, the employee pursued claims of retaliatory discharge based on both contract and tort theories under Alaska state law. The contract cause of action was characterized as a breach of an implied covenant of good faith and fair dealing. The defendant argued that section 301 preempted these claims.

The Ninth Circuit held that section 301 did not preempt the retaliatory discharge contract claim. The court found that a determination of the claim for retaliatory discharge did not require an analysis of the collective bargaining agreement. Furthermore, the court determined that the claim was necessary to protect employees' rights under the Alaska Workers' Compensation Act. 920 F.2d at 1436. Distinguishing *Allis–Chalmers*, the court noted that the disability issue in *Allis–Chalmers* was defined by the terms of the collective bargaining agreement, whereas the claim in *Eldridge* was independent of the labor agreement. The court in *Eldridge* analogized its case to the retaliatory discharge claim in *Lingle*.

The following Ninth Circuit decisions follow the *Allis–Chalmers/Newberry* route

of finding preemption. *Harris v. Alumax Mill Prods., Inc.*, 897 F.2d 400, 402 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 102, 112 L.Ed.2d 73 (1990) (employee's claims for breach of covenant of good faith and fair dealing and intentional infliction of emotional distress were preempted by section 301); *Truex v. Garrett Freightlines, Inc.*, 784 F.2d 1347, 1349–52 (9th Cir.1985) (section 301 preempts claims for intentional infliction of emotional distress and breach of implied covenant of good faith and fair dealing); *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468 (9th Cir.1984) (plaintiff's claims for breach of contract, wrongful discharge, and intentional infliction of emotional distress do not survive section 301 preemption).

On the other hand, the following Ninth Circuit cases are more analogous to the *Lingle/Eldridge* rationale rejecting preemption. *Galvez v. Kuhn*, 933 F.2d 773 (9th Cir.1991) (employee's claims of assault and battery and intentional infliction of emotional distress were not preempted by section 301); *Gulden v. Crown Zellerbach Corp.*, 890 F.2d 195, 198–99 (9th Cir.1989) (employee's fraud claim was not preempted); *Ackerman v. Western Elec. Co.*, 860 F.2d 1514 (9th Cir.1988) (discriminatory discharge claim was not preempted by section 301); *Tellez v. Pacific Gas and Elec. Co.*, 817 F.2d 536, 539–40 (9th Cir.1987) (section 301 does not preempt employee's claims for intentional and negligent infliction of emotional distress).

There are also numerous Ninth Circuit cases which have held that some of the plaintiffs' state law claims are preempted by section 301 while others are not. *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 239 (9th Cir.1990) (section 301 preempted discharged employee's claims for breach of covenant of good faith and fair dealing and intentional infliction of emotional distress, but did not preempt claim for wrongful discharge); *Miller v. AT & T Network Sys.*, 850 F.2d 543, 548–51 (9th Cir.1988) (intentional infliction of emotional distress claim preempted, but discriminatory discharge claim survived); *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857 (9th Cir.1987), *cert. denied*, 486 U.S. 1054, 108 S.Ct. 2819,

100 L.Ed.2d 921 (1988) (section 301 preempted terminated employees' claims for breach of covenant of good faith and fair dealing, but did not preempt wrongful discharge claims).

### 2. *Application of Section 301 to Singh's Wrongful Discharge Claim*

■ For the reasons detailed below, this court holds that Singh's claims for wrongful discharge (Count I), intentional infliction of emotional distress (Count II), and negligent infliction of emotional distress (Count III), are preempted by section 301 of the Labor Management Relations Act.

Section 8 of the CBA governing Singh's employment states that Lunalilo Home may suspend or discharge any employee for "just cause." Lunalilo Home fired Singh because it determined that she had abused one or more of the residents. In Counts I–III, Singh essentially alleges that she did not abuse any of the residents and that she was unfairly discharged. Singh also claims that she was terminated in retaliation for her complaints regarding understaffing.

A determination of the validity of Singh's claims for wrongful discharge and intentional and negligent infliction of emotional distress requires an analysis of whether the discharge was justified under the terms of the CBA. *See Newberry v. Pacific Racing Ass'n,* 854 F.2d 1142, 1149–50 (9th Cir. 1988). Thus, the gravamen of Singh's complaint is that she was discharged without "just cause." A dispute over whether "just cause" existed for her discharge is clearly a matter covered by the CBA and requiring interpretation of the CBA.

The arbitration procedures set forth in the CBA are the exclusive remedy for a breach of the CBA. Singh failed to pursue properly her wrongful discharge claim through the CBA arbitration procedures. As a result of this failure and the exclusivity of remedy, Singh attempted to recharacterize her claim as state law actions unrelated to the CBA.

Such "artful pleading" should not be permitted to defeat the significant policies of federal labor law. *See Olguin v. Inspiration Consol. Copper Co.,* 740 F.2d 1468, 1472 (9th Cir.1984). Since nearly every breach of a CBA can be restated as a state law contract or tort action, the central role of arbitration in federal labor law could be easily bypassed if section 301 is not interpreted as preempting these claims. *See Allis–Chalmers v. Lueck,* 471 U.S. 202, 219–20, 105 S.Ct. 1904, 1915, 85 L.Ed.2d 206 (1985).

The cases upon which Singh relies are readily distinguishable from this case. *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); *Eldridge v. Felec Servs., Inc.,* 920 F.2d 1434 (9th Cir.1990). In *Lingle* and *Eldridge,* the plaintiff employee alleged that he or she had been discharged in retaliation for filing a state workers' compensation claim. Both the Supreme Court and the Ninth Circuit determined that the respective retaliatory discharge claims were not preempted by section 301 because the claims were based on the employee's independent rights under the workers' compensation scheme. *Lingle,* 108 S.Ct. at 1881–83; *Eldridge,* 920 F.2d at 1436–39.

In contrast to *Lingle* and *Eldridge,* this case does not involve any independent state policy such as a workers' compensation act. Singh's claim is simply a factual dispute relating to the reason for her termination. The issue in her case does not implicate any broader state statutory policy. Similarly, this case is distinguishable from other Ninth Circuit cases which held that an employee's claim of discriminatory discharge was not preempted by section 301 because of the independent state policy embodied in state anti-discrimination statutes. *See Ackerman v. Western Elec. Co.,* 860 F.2d 1514, 1517 (9th Cir.1988).

### III. *Count IV—Retaliatory Discharge*

■ Count IV, a retaliatory discharge claim, is founded upon basically the same theories underlying Counts I–III. Singh claims that she was terminated in retaliation for her complaints about alleged understaffing at the Lunalilo Home. However, Singh alleges that her retaliatory discharge claim, unlike the prior claims, is a violation of a Hawaii statute. Haw.Rev.

Stat. § 378–32 (entitled "Unlawful suspension, discharge, or discrimination"). *See Fergerstrom v. Datapoint Corp.*, 680 F.Supp. 1456 (D.Haw.1988).

Generally, section 378–32 states that it is illegal for any employer to suspend, discharge, or discriminate against any employee solely because:

(1) the employee has filed a Chapter XIII bankruptcy petition or the employer has been summoned as a garnishee in a proceeding in which the employee is the debtor;

(2) the employee has suffered a work-related injury under certain circumstances; or

(3) the employee testified or was subpoenaed to testify in a proceeding under this part.

Haw.Rev.Stat. § 378–32(1)–(3).

None of the circumstances enumerated in section 378–32 apply to this case. Singh contends that she was discharged in retaliation for her participation in a union grievance meeting and her complaints about understaffing. Such conduct clearly does not fall into any of the section 378–32 categories. Therefore, Singh has failed to state a claim under section 378–32 of the Hawaii Revised Statutes.

■ Even if Singh had stated a claim under section 378–32, it would be time-barred because she did not file a written complaint with the Hawaii Department of Labor and Industrial Relations within thirty days after her discharge. Haw.Rev. Stat. § 378–33(a)–(b). Furthermore, the retaliatory discharge claim is subject to the same federal preemption arguments as Counts I–III.

IV. *Count V—Unfair and Inadequate Representation*

■ The plaintiff's final claim is that the UPW failed to provide fair and adequate representation to Singh in her grievance against Lunalilo Home. This claim is made pursuant to section 378–51 of the Hawaii Revised Statutes. Section 378–51 provides:

Any complaint ... by an employee against a labor organization for its alleged failure to fairly represent the employee in an action against an employer shall be filed within *ninety days* after the cause of action accrues, and not thereafter.

Where the alleged failure to represent an employee arises from a grievance, the cause of action shall be deemed to accrue when an employee receives actual notice that a labor organization either refuses or has ceased to represent the employee in a grievance against an employer.... (emphasis added).

Singh's alleged cause of action against the union accrued on the date she received notice that the UPW refused or ceased to represent her against Lunalilo Home. Thus, the claim accrued on or before April 25, 1989 when the plaintiff received the letter from the UPW agent explaining that the time limits for filing a grievance had expired.

Plaintiff had ninety days from April 25, 1989 to file a complaint against the UPW. Because Singh failed to file a complaint against the UPW within the time limits specified in section 378–51 of the Hawaii Revised Statutes, her claim must be dismissed.

### CONCLUSION

This court GRANTS defendants' motion to dismiss.

IT IS SO ORDERED.